Filed 12/1/14

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, | ) ) ) | |
| Plaintiff and Respondent, | ) ) | S206350 |
| v. | ) ) | Ct.App. 4/2 E052729 |
| JAN STIGLITZ, as Hearing Officer, etc., | ) ) | Riverside County |
| Defendant and Respondent; | ) ) | Super. Ct. No. RIC10004998 |
| KRISTY DRINKWATER, | ) ) | |
| Real Party in Interest and Respondent; | ) ) ) | |
| RIVERSIDE SHERIFFS' ASSOCIATION, | ) ) ) | |
| Intervener and Appellant. | ) ) | |
| _____ | ) ) | |
| RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, | ) ) ) | |
| Plaintiff and Respondent, | ) ) | |
| v. | ) ) | Ct.App. 4/2 E052807 |
| JAN STIGLITZ, as Hearing Officer, etc., | ) ) | Riverside County |
| Defendant and Respondent; | ) ) | Super. Ct. No. RIC10004998 |
| KRISTY DRINKWATER, | ) ) | |

Here we hold that when hearing an administrative appeal from discipline imposed on a correctional officer, an arbitrator may rule upon a discovery motion for officer personnel records, commonly referred to as a *Pitchess* motion. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); Evid. Code, §§ 1043, 1045.)  Evidence Code section 1043 expressly provides that *Pitchess* motions may be filed with an appropriate "administrative body."  The language reflects a legislative intent that administrative hearing officers be allowed to rule on these motions.  This holding harmonizes the statutory scheme with other Evidence Code provisions and furthers the goals of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.).

## I.  BACKGROUND

The Riverside County Sheriff's Department (the department) fired Deputy Kristy Drinkwater for falsifying her payroll forms.  A memorandum of understanding (MOU) between the Riverside Sheriffs' Association (Sheriffs' Association) and the county provided for an administrative appeal.  The parties chose arbitrator Jan Stiglitz as the hearing officer.

Drinkwater intended to urge a disparate treatment defense, claiming that others had committed similar misconduct but were not fired.  Accordingly, she sought discovery of redacted records "from personnel investigations of any Department employees who have been disciplined for similar acts of misconduct." (See *Pegues v. Civil Service Com.* (1998) 67 Cal.App.4th 95, 105-106; *Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 229-231.)  Limiting her request to events during the previous five years, she sought incident summaries, the rank of

the officer, and the discipline imposed. The department objected, arguing in part that Drinkwater could not satisfy the requirements for a *Pitchess* motion under Evidence Code sections 1043 and 1045, and could not establish the good cause required for discovery. Stiglitz denied the motion without prejudice, ruling the department need not search its records for similar disciplinary cases. Instead, Drinkwater was obligated to identify particular officers whose records she believed were relevant to her claim.

Drinkwater renewed her motion, supported by counsel's declaration that 11 named officers had allegedly committed similar misconduct but received little or no discipline. Stiglitz ordered production of the 11 officers' records for in camera review.

The department sought a writ of administrative mandate in superior court. (See Code Civ. Proc., § 1094.5.) It argued initially that Drinkwater failed to establish good cause for discovery because counsel's declaration was speculative and *Pitchess* discovery was only available for officers involved in the underlying incident at issue. The department then filed a supplemental brief citing the recent case of *Brown v. Valverde* (2010) 183 Cal.App.4th 1531 (*Brown*). *Brown* held that a driver facing a license suspension for driving under the influence could not seek *Pitchess* discovery in a Department of Motor Vehicles (DMV) administrative proceeding. (See discussion, *post*.) Relying upon *Brown*, the department argued only judicial officers could grant *Pitchess* motions, depriving Stiglitz of authority to rule. The superior court agreed and granted mandate, ordering Stiglitz to reverse his prior order.

The Sheriffs' Association sought to intervene, moving to set aside the mandate order and to secure a new hearing. Intervention was granted. After additional briefing and a new hearing, the superior court again granted the department's mandate petition, relying upon *Brown*.

3

Drinkwater and intervener Sheriffs' Association sought review. In consolidated appeals, the Court of Appeal reversed, distinguishing *Brown* and criticizing its reasoning. We affirm.

## II. DISCUSSION

The department again urges that only judicial officers are authorized to rule on *Pitchess* motions. That argument fails in light of the governing statutes.

### A. The *Pitchess* Statutes

In *Pitchess*, this court held a criminal defendant could obtain discovery of certain law enforcement personnel records upon a sufficient showing of good cause. (*Pitchess, supra,* 11 Cal.3d at pp. 537-540.) "In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as '*Pitchess* motions' . . . through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81, fn. omitted (*City of Santa Cruz*).) Those sections create a statutory scheme making these records confidential and subject to discovery only through the procedure set out in the Evidence Code. (*City of Santa Cruz*, at pp. 81-82.) The sole issue here is whether, by statute, these motions may only be ruled on in the superior court, or whether they can be resolved by an administrative hearing officer. In answering this question of statutory interpretation, our goal is to effectuate the Legislature's intent. (*People v. Johnson* (2013) 57 Cal.4th 250, 260; *People v. Cornett* (2012) 53 Cal.4th 1261, 1265.) " 'When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls.' [Citation.] '[W]henever possible, significance must be given to every word [in a statute] in pursuing the legislative purpose, and the court should avoid a construction that makes some

4

words surplusage.' [Citation.] '[W]e may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results . . . .' [Citation.]" (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1131; accord, *Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 518-519.) We consider the applicable statutes in turn.

Penal Code section 832.7, subdivision (a) provides in part: "Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to [Penal Code] Section 832.5 [regarding the investigation and retention of citizen complaints], or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil *proceeding* except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." (Italics added.) Penal Code section 832.8 defines "personnel records," a definition not disputed here.[1]

Evidence Code section 1043, subdivision (a) reads in part: "*In any case* in which discovery or disclosure is sought of peace or custodial officer personnel records . . . , the party seeking the discovery or disclosure shall file a written motion with the appropriate court *or administrative body* . . . ." (Italics added.) The expansive language of Evidence Code section 1043, subdivision (a) does two things. First, it makes clear that *Pitchess* motions may be brought in both civil and criminal cases. (See *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 293 (*Peace Officer Standards*); Pen. Code,

---

[1]     Penal Code section 832.8 defines personnel records as any file maintained under an individual's name by his or her employer, and includes information such as personal data, medical history, employee "advancement, appraisal, or discipline," complaints or investigation of complaints pertaining to the performance of the officer's duties, and "[a]ny other information the disclosure of which would constitute an unwarranted invasion of personal privacy."

5

§ 832.7, subd. (f).) Second, Evidence Code section 1043 specifically states the motion should be filed in the appropriate court "or administrative body." Sections 1043 and 1045 appear in division 8 of the Evidence Code dealing with privileges. Chapter 4, article 9 of that division contains definitions to govern the construction of sections contained in division 8. Evidence Code section 901 expansively defines a "proceeding" as "*any* action, hearing, investigation, inquest, or inquiry (whether conducted by a court, *administrative agency, hearing officer, arbitrator*, legislative body, or *any other person authorized by law*) in which, pursuant to law, testimony can be compelled to be given." (Italics added.) The Law Revision Commission explained that this definition included "administrative proceedings" and "arbitration proceedings" (Cal. Law Revision Com. com., reprinted at 29B pt. 3A West's Ann. Evid. Code (2009 ed.) foll. § 901, p. 213), and that this broad definition was necessary to protect privileges by making them applicable to nonjudicial proceedings (*id.*, foll. § 910, pp. 216-217).

As explained in *City of Santa Cruz*, Evidence Code section 1043 sets out the initial good cause showing an applicant must make to even begin the discovery process. If that showing is successful, Evidence Code section 1045 governs the conduct of the resultant hearing in camera. The materials sought must be shown "relevant to the subject matter involved in the pending litigation." (Evid. Code, § 1045, subd. (a).) Certain categories of information are not discoverable.[2] (Evid. Code, § 1045, subds. (a), (b); see *City of Santa Cruz, supra,* 49 Cal.3d at p. 83.)

---

[2] Information excluded from disclosure include complaints regarding incidents occurring five or more years before the event at issue, facts "that are so remote as to make disclosure of little or no practical benefit," and, in any criminal case, the conclusions of an officer investigating a complaint. (Evid. Code, § 1045, subd. (b).)

B.  Evidence Code Section 1043 and the Lack of a Transfer Mechanism

The department observes that Evidence Code section 1045 repeatedly refers to "the court" as the entity that must conduct an in camera review, determine relevance, and issue appropriate protective orders.  It argues that because "the court" appears five[3] times in Evidence Code section 1045, these references trump the single reference to "administrative body" in Evidence Code section 1043.  The department argues that although Evidence Code section 1043 mandates that *Pitchess* motions be filed in "the appropriate court or administrative body," Evidence Code section 1045's repeated reference to "the court" means that only judicial officers may rule on them.

This argument fails for several reasons.  First, it simply reads "administrative body" out of Evidence Code section 1043.  If the Legislature intended that only the superior court could rule on *Pitchess* motions, it could easily have said so.  There is no discernable reason why the Legislature would *expressly* provide in Evidence Code section 1043 that a *Pitchess* motion may be filed before an administrative body, then *implicitly* suggest in Evidence Code section 1045 that such a body was powerless to act upon the motion because only "the court" may conduct the required in camera review.  Indeed, such an interpretation would mean the Legislature had expressly provided for the doing of an idle act:  filing a motion in a body not authorized to rule on it.

_____

[3]  See Evidence Code section 1045, subdivisions (b) ("In determining relevance, the court shall examine . . . :"), (c) ("the court shall consider . . . ."), (d) ("the court may make any order which justice requires . . . ."), (e) ("The court shall . . . order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law.").  The department counts as a sixth reference the use of "the court" in Evidence Code section 915, subdivision (b).  This statute predated the statutory *Pitchess* scheme, and its reference to "the court" does not support the department's position in any event.

7

Second, the argument completely ignores the broad definition of "proceeding" in Evidence Code section 901, which includes administrative hearings and arbitrations. Disregarding that section violates the principle that we consider the language of the entire scheme and related statutes, harmonizing the terms when possible. If any ambiguity remains, we may examine the legislative history and the stated purpose of the scheme to guide our interpretation. (See *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 803.) Evidence Code section 900 reflects a legislative mandate that the definitions provided "govern the construction" of the division in which Evidence Code sections 1043 and 1045 appear.

Further, had the Legislature intended that *Pitchess* motions could only be conducted in the superior court, it could have provided a mechanism to transfer a motion from an administrative proceeding to the superior courts. It did not do so. Evidence Code section 1043 makes no provision for the transfer of *Pitchess* motions from an administrative setting to the superior court. The parties agree that no other statute authorizes such a transfer. A transfer procedure would require the creation of an extraordinary procedure because, in a case like this one, there is no case or controversy pending in the superior court.

While the parties cite no statutory transfer mechanism, amici curiae suggest one may be found through various other provisions. The Los Angeles Police Protective League (the Protective League) points to two statutes that might permit an extraordinary transfer. First, it cites Code of Civil Procedure[4] section 1281.8, subdivision (b), which allows a party in arbitration to file in superior court "an application for a provisional remedy in connection with an arbitrable controversy,

---

**4**     Unspecified statutory references are to the Code of Civil Procedure.

but *only upon the ground* that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." (Italics added.) "The logical reason for the requirement that an applicant be required to show that an arbitration award may be rendered ineffectual is to ensure that the court does not invade the province of the arbitrator—i.e., the court should be empowered to grant provisional relief in an arbitrable controversy only where the arbitrator's award *may not be adequate to make the aggrieved party whole*." (*Woolley v. Embassy Suites, Inc.* (1991) 227 Cal.App.3d 1520, 1527, italics added; see *California Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Estate Group* (2011) 193 Cal.App.4th 849, 856.) Section 1281.8, thus, does not speak to any and all types of harm. It addresses only a circumstance in which a party might prevail in an arbitration but still have no recourse due to some changing condition. (See *California Retail Portfolio Fund GMBH & Co. KG,* at pp. 859-862 [affirming writ of attachment under section 1281.8 due to the defendant's potential insolvency, which might have rendered an arbitration award ineffectual].)

This scheme does not apply here. Initially, section 1281.8 only applies to applications by *parties*. There may be instances in which the custodian of records is not a party to the arbitration. Here, although the department is a party, the only substantive "award" to which it may be entitled in the arbitration is a confirmation that its decision to terminate Drinkwater was proper. The department does not explain how that potential confirmation would be rendered ineffectual by production of the records sought, or by any proper order of disclosure.

The Protective League also cites a provision of the Public Safety Officers Procedural Bill of Rights Act (POBRA) (Gov. Code, § 3300 et seq.). Government Code section 3309.5, subdivision (d)(1) provides: "In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary

9

relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer." This provision was enacted to prevent police departments from violating the rights of officers. (See *Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 827-828.) It simply does not speak to the situation at issue here. Further, nothing in the POBRA's general grant of a right to administrative appeal (Gov. Code, §§ 3304, subd. (b), 3304.5) suggests an authorization to transfer a matter from an administrative proceeding to the superior court.

The California State Association of Counties and the California League of Cities suggest a writ of administrative mandate might provide a transfer mechanism. They propose that the hearing officer could begin the *Pitchess* inquiry under Evidence Code section 1043. If the hearing officer finds a good cause showing has been made, a party may seek administrative mandate. The superior court could then review the records under Evidence Code section 1045.

Such an interpretation would morph the mandate statute beyond its delineated contours. The Code of Civil Procedure permits administrative mandate for inquiry "into the validity of any final administrative order," but only as to "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (§ 1094.5, subds. (a), (b).) In that mandate proceeding, the superior court would only be empowered to review the propriety of the good cause determination and production order. If it determined that the order was proper, the court's review role would end. The authority conferred under section 1094.5 does not grant the court broader jurisdiction to actually conduct a review of the records

10

produced. Nor does it create a cause or controversy beyond the question referred to in the statutory language.

Similarly, we are not authorized to create a nonstatutory transfer mechanism here. Drinkwater cites section 187, which states: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code." "The section does not speak to jurisdiction; it does not create jurisdiction; rather, the existence of jurisdiction is the premise for its application. Where jurisdiction exists from other sources, Code of Civil Procedure section 187 grants courts authority to exercise any of their various powers as may be necessary to carry out that jurisdiction." (*People v. Picklesimer* (2010) 48 Cal.4th 330, 338 (*Picklesimer*).)

Code of Civil Procedure section 187 (CCP section 187) comes into play only when a court has lawful jurisdiction. No statute confers jurisdiction on the superior court to hear a *Pitchess* motion when, as here, the motion is filed with an administrative hearing officer. Neither Evidence Code section 1045 nor Evidence Code section 915 speaks to jurisdiction. (See discussion, *post*.) At most, those provisions describe the duties of a court *if the motion is properly before it*. Only Evidence Code section 1043, which allows a *Pitchess* motion to be filed "with the appropriate court or administrative body," speaks to jurisdiction. This understanding is confirmed by Evidence Code section 1043, subdivision (b)(3), which provides that a motion must include affidavits that "set[] forth the materiality thereof to the subject matter involved *in the pending litigation* . . . ." (Italics added.) Here, the pending litigation is the administrative appeal conducted

11

pursuant to the MOU. The only express grant of jurisdiction reflected in the *Pitchess* statutes allows the matter to be placed before the hearing officer. CCP section 187 requires an independent grant of jurisdiction by constitution or statute. Evidence Code section 1043 articulates the appropriate venue for the filing of a *Pitchess* motion. These provisions, read together, do not authorize the judicial creation of a transfer mechanism from the hearing officer to superior court. (See *Picklesimer, supra,* 48 Cal.4th at p. 338 [refusing to apply CCP § 187 to find the superior court had jurisdiction to hear a postjudgment motion for relief from an improper sex offender registration requirement]; *Swarthout v. Superior Court* (2012) 208 Cal.App.4th 701, 707-708 [same as to a postconviction motion to transfer an inmate]; *People v. Ainsworth* (1990) 217 Cal.App.3d 247, 254-255 [same as to postconviction discovery motion].)

Drinkwater also suggests that "all courts have inherent supervisory or administrative powers which enable them to carry out their duties, and which exist apart from any statutory authority." This argument suffers the same defect as the one above. Courts have supervisory authority to " 'control litigation *before them. . . .* [Citation.]' " (*In re Reno* (2012) 55 Cal.4th 428, 522, italics added.) A court has no authority to confer jurisdiction upon itself where none exists. Indeed, in *Pitchess* itself, although we suggested that a court had "inherent power to order discovery when the interests of justice so demand" (*Pitchess, supra,* 11 Cal.3d at p. 535), there was no question that the court had jurisdiction over the pending criminal case. Similar exercises of a court's inherent supervisory authority have occurred in the context of a court that *already had jurisdiction over the matter*.[5]

---

[5] See *Shively v. Stewart* (1966) 65 Cal.2d 475, 479-480 (nonstatutory discovery); *Citizens Utilities Co. v. Superior Court* (1963) 59 Cal.2d 805, 811-813 (compensation for mandatory improvements made after condemnation); *Tide*

*(footnote continued on next page)*

The Legislature did not specify a transfer mechanism in the *Pitchess* statutes.  No other statute or authority exists for such a transfer.  Accordingly, we conclude that by expressly permitting filing with an appropriate administrative body in Evidence Code section 1043, the Legislature intended to allow administrative hearing officers to decide such motions without court intervention. The department's contrary construction of the scheme violates "the rule of construction that courts should, if possible, accord meaning to every word and phrase in a statute to effectuate the Legislature's intent."  (*People v. Cobb* (2010) 48 Cal.4th 243, 253; *St. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 289.)  There is no indication the Legislature contemplated the filing of an ineffectual motion with a body that could not consider it.

### C.  Evidence Code Sections 1045 and 915

Evidence Code section 1045's repeated reference to the duties of "the court" can be understood in the context of the legislative history of the *Pitchess* statutes.  When Evidence Code sections 1043 and 1045 were enacted, the

---

*(footnote continued from previous page)*

*Water Associated Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 825-826 (cross-complaints); *People v. Castello* (1998) 65 Cal.App.4th 1242, 1246-1250 (reconsideration of interim ruling); *In re Amber S.* (1993) 15 Cal.App.4th 1260, 1263-1267 (control of testimony); *Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1376-1381 (exclusion of evidence); *Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 18-23 (designating defense counsel program in asbestos litigation); *Peat, Marwick, Mitchell & Co. v. Superior Court* (1988) 200 Cal.App.3d 272, 286-291 (evidence sanction); *James v. Superior Court* (1978) 77 Cal.App.3d 169, 175-176 (juvenile competency hearing); cf. *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967-968 (control of litigation); *Walker v. Superior Court* (1991) 53 Cal.3d 257, 266-267 (preunification authority to transfer cases to the municipal court).

13

Legislature was focused primarily upon our *Pitchess* decision and its consequences in the context of criminal prosecutions, which obviously occur before courts. "After this court rendered its decision, concerns were expressed to the Legislature that, in response to *Pitchess*, law enforcement departments were destroying personnel records in order to prevent discovery; in some instances, criminal charges had been dismissed because the records to which the defendant would have been entitled no longer were available. (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1436 (1977–1978 Reg. Sess.) as introduced, p. 7; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1436 (1977–1978 Reg. Sess.) as amended Apr. 3, 1978; Assem. Com. on Crim. Justice, Analysis of Sen. Bill No. 1436 (1977–1978 Reg. Sess.) as amended Aug. 7, 1978.) As a result of these concerns, Senate Bill No. 1436 was enacted, requiring that records relating to citizen complaints be maintained for a period of five years. (Stats. 1978, ch. 630, § 4, p. 2083, amending [Pen. Code,] § 832.5, subd. (b).) The statute also established procedures, consistent with *Pitchess*, permitting discovery of peace officer personnel records in civil or criminal cases only after an in camera review of the records by a judge and a determination that the information sought is relevant to the pending litigation. (Stats. 1978, ch. 630, §§ 1 & 3, pp. 2082–2083, adding Evid. Code, §§ 1043 & 1045.)" (*Peace Officer Standards, supra,* 42 Cal.4th at p. 293.)

The reality that *Pitchess* motions are so frequently made in the context of criminal prosecutions would explain why Evidence Code section 1045 references "the court." However, the Legislature recognized in Evidence Code section 1043 that *Pitchess* motions may be relevant in other contexts, thus explaining its broad language allowing the filing of the motion in "any case" before "the appropriate court or administrative body." Given the legislative history of the *Pitchess* statutes, the expansive language of Evidence Code section 1043, and the absence

14

of a transfer mechanism, the Legislature's reference to "the court" in Evidence Code section 1045 cannot be interpreted as a coded expression of legislative intent to substantively limit who may rule on *Pitchess* motions.

The department argues that Evidence Code section 915 constitutes such a substantive limitation. Evidence Code section 915, subdivision (a) states that in ruling on a claim of privilege, the presiding officer cannot require disclosure of the assertedly privileged information before ruling on the privilege claim. Evidence Code section 915, subdivision (b) provides an exception when the court is unable to rule unless it knows the content of the assertedly privileged information. In such a case, the court may order the disputed information disclosed for review in chambers. The Law Revision Commission's comments following Evidence Code section 915 noted that "[t]he exception in subdivision (b) applies only when a court is ruling on the claim of privilege. Thus, in view of subdivision (a), disclosure of the information cannot be required, for example, in an administrative proceeding." (Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code, *supra*, foll. § 915, p. 256.)

The department observes Evidence Code section 1045, subdivision (b) directs that "[i]n determining relevance, the court shall examine the [sought] information in chambers in conformity with Section 915 . . . ." Because Evidence Code section 915 does not mention administrative proceedings, the department argues hearing officers have no authority to decide *Pitchess* motions. The department's argument is unpersuasive for several reasons. First, Evidence Code section 1045 simply requires that an in camera *Pitchess* hearing must be had "in conformity with" Evidence Code section 915, " 'i.e., out of the presence of all persons except the person authorized to claim the privilege and such other persons as he or she is willing to have present . . . .' " (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1038 (*Alford*); see *City of Santa Cruz, supra,* 49 Cal.3d at p. 83.)

15

We observed in *People v. Mooc* (2001) 26 Cal.4th 1216 (*Mooc*): "[T]o protect the officer's privacy, the examination of documents and questioning of the custodian should be done in camera in accordance with the requirements of Evidence Code section 915, and the transcript of the in camera hearing and all copies of the documents should be sealed." (*Id.* at p. 1229.) Thus, we have recognized that Evidence Code section 1045 referenced Evidence Code section 915 only to the extent the latter provision defined *what* procedure was required at an in camera hearing, not *who* would conduct the hearing. The department's reading of the statute would render the reference to Evidence Code section 915 mere surplusage.

Second, section 915 was enacted as part of the original Evidence Code in 1965. The Law Revision Commission's comment predated both our *Pitchess* decision and the Legislature's subsequent codification of it. It is, then, a poor indicator of legislative intent as to the proper scope of the *Pitchess* scheme. The commission's comments informed the Legislature's understanding at the time it enacted the Evidence Code. They did not bar the Legislature from taking future action, as it did when it amended the code 13 years later following this court's *Pitchess* decision. (Cf. *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856, fn. 3.)

Third, and most problematic, the department's interpretation of Evidence Code section 915 suffers from the same defect as its interpretation of Evidence Code section 1045. It requires us to conclude that the Legislature intended to also permit *Pitchess* filings with an appropriate "administrative body" under Evidence Code section 1043, yet render that body unable to act on them. The Legislature could not have intended to provide for the idle act of filing ineffectual motions.

16

D.  The Purposes Behind the *Pitchess* Statutes and POBRA

Our conclusion is also consistent with the purposes behind the POBRA. The POBRA, to which these parties have contractually bound themselves, "sets forth a number of basic rights and protections which must be accorded individual public safety officers by the public agencies which employ them." (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 679.)  Included is the right to administratively appeal an adverse employment decision, "to give a peace officer 'an opportunity . . . "to convince the employing agency to reverse its decision" ' to take punitive action." (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1287 (*Copley Press*), italics omitted; *County of Riverside v. Superior Court* (2002) 27 Cal.4th 793, 799.)  The Legislature declared that "effective law enforcement depends upon the maintenance of stable . . . relations, between public safety employees and their employers," and that basic protections for officers were necessary to preserve that stability. (Gov. Code, § 3301.)  Allowing relevant discovery to be ordered in an administrative hearing furthers these goals.

Our conclusion is also consistent with the overall aims of the *Pitchess* scheme.  Although the department adamantly argues the sole purpose of the statutes was to rein in *Pitchess* motions, that characterization is not entirely accurate.  As discussed, the *Pitchess* statutes reflected the Legislature's attempt to balance a litigant's discovery interest with an officer's confidentiality interest. (See *Peace Officer Standards, supra,* 42 Cal.4th at p. 293; *Garcia v. Superior Court* (2007) 42 Cal.4th 63, 69-70 (*Garcia*); *City of Santa Cruz, supra,* 49 Cal.3d at p. 84.)  Whether filed before a court or an administrative hearing officer, interests must still be balanced when ruling on a *Pitchess* motion.

We emphasize that here there is no question hearing officer Stiglitz, an attorney, is qualified to rule on the *Pitchess* motion.  The MOU provides that a hearing officer be selected from a mutually agreed-upon list.  (MOU, art. XII,

17

§ 14, subd. A.) If the department believed Stiglitz was not qualified for any reason, it could have removed him from the list or stricken him as an available hearing officer in this case. In any event, the Legislature in Evidence Code section 914 has determined that hearing officers generally have the authority to rule on claims of privilege in the same manner as courts.[6]

Further, we observe that this case reflects several safeguards against improper disclosure of confidential records. The MOU here expressly provides that the administrative hearing is a "private proceeding" between the disciplined officer and the county. (MOU, art. XII, § 14, subd. (H)(9).) Officer personnel records are confidential under Penal Code section 832.7, and we have held such records produced at administrative disciplinary proceedings are not subject to public disclosure. (See *Copley Press, supra,* 39 Cal.4th at pp. 1286-1299.) In addition, any discovered records may only be used in the proceeding at issue.[7] (See Evid. Code, § 1045, subd. (e); *Alford, supra,* 29 Cal.4th at pp. 1039-1043.)

An additional confidentiality safeguard appears in Evidence Code section 1045, subdivision (c), which provides that "[i]n determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual

---

**6** See Evidence Code section 914, subdivision (a) ("The presiding officer shall determine a claim of privilege in any proceeding in the same manner as a court determines such a claim under Article 2 (commencing with Section 400) of Chapter 4 of Division 3.").

**7** The parties are free to include other protective language in their MOUs, including an explicit agreement that any *Pitchess* material can only be used in connection with the proceeding in which it is sought.

18

personnel records." Thus, upon an appropriate finding, other data could be released in lieu of personnel records.

We have also clarified that an officer's entire personnel file need not be presented for review, only materials of the type requested. (*Mooc, supra,* 26 Cal.4th at pp. 1228-1230.) In the present case, such materials would be limited to incidents involving conduct similar to Drinkwater's. This limitation balances privacy interests while permitting focused discovery.

The department does not argue that Drinkwater's disparate treatment defense is invalid or that the discovery she seeks is irrelevant to that defense. Accordingly, we have no occasion to discuss the availability or scope of such a defense. Drinkwater's *Pitchess* motion also named the specific officers whose records she sought, reducing the possibility of an improper "fishing expedition."

The department relies heavily upon *Brown, supra,* 183 Cal.App.4th 1531, a case readily distinguishable. *Brown* concluded that a *Pitchess* motion was inconsistent with the statutory scheme by which a driver's license may be suspended after a drunk driving arrest. The *Brown* court reasoned a *Pitchess* motion would frustrate the Legislature's aim to quickly remove unsafe drivers from the road using an administrative procedure. Further, the hearing addressed only whether the licensee drove with a blood-alcohol level above the legal limit. The relevance of *Pitchess* discovery in that context was questionable. (*Brown*, at pp. 1555-1557.) To the extent *Brown* rejected the claim "that the Legislature intended *Pitchess* discovery to be available in *all* administrative proceedings" where an officer's credibility was at issue (*id.*, at p. 1555, italics added), such conclusion is inapposite here. The department concedes that the discovery Drinkwater seeks is relevant to the review of her discipline and does not bear on the credibility of officers whose records are sought. The question here is not whether those officers might be credible, but whether department decisionmakers

19

granted those officers disparate treatment. Additionally, unlike the license suspension context, allowing *Pitchess* motions in this case furthers the goals of the POBRA, and honors the Legislature's *Pitchess* scheme. In any case, " ' "[i]t is axiomatic that cases are not authority for propositions not considered." ' " (*McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626; *People v. Johnson* (2012) 53 Cal.4th 519, 528.) The precedential value of *Brown* is limited to its facts involving a driver's license suspension.

        E.  Evidence Code Section 1047

        The department argues that, because the officers whose records Drinkwater has requested had nothing to do with her termination, she is not entitled to discovery. In support, the department cites Evidence Code section 1047, which provides in part: "Records of peace officers or custodial officers . . . who either were not present during the arrest or had no contact with the party seeking disclosure from the time of the arrest until the time of booking, or who were not present at the time the conduct is alleged to have occurred within a jail facility, shall not be subject to disclosure." The department's reading of this statute was rejected in *Alt v. Superior Court* (1999) 74 Cal.App.4th 950. *Alt* reasoned that Evidence Code section 1047 only applies if the discovery request relates to an incident *involving* an arrest or its equivalent. When, as here, the discovery request is unrelated to an arrest, Evidence Code section 1047's limitation does not apply. As *Alt* observed, a contrary conclusion "would largely supplant the general discovery standards set forth in sections 1043 and 1045. [A contrary] interpretation of section 1047 would mean that police personnel information could be discovered *only* if there had been an arrest or contact between arrest and

booking, and in no other situation.  This reading runs counter to *Memro's*[8] observation that sections 1043 and 1045 do not limit discovery of police personnel records to cases involving altercations between police officers and arrestees." (*Alt*, at pp. 957-958.)

Evidence Code section 1047's legislative history supports *Alt's* conclusion. The proponents of the provision urged its purpose was to deter frivolous *Pitchess* requests made by criminal defendants "as a bargaining tool to attempt to reduce pending criminal charges" "made primarily to harass the officers and supervisors within police and sheriff's departments."  (Sen. Judiciary Com., analysis of Assem. Bill No. 1112 (1985-1986 Reg. Sess.) July 3, 1985, p. 3.)  The Senate Judiciary Committee analysis observed:  "The bill would only pertain to cases alleging the use of excessive force by a peace officer in connection with an arrest. It would not apply where the person had only been detained and not arrested.  [¶] This distinction appears well founded:  since the person had not been arrested there would be no incentive to file a frivolous request."  (*Id*. at p. 4.)  This analysis expressly alerted the Legislature to the limitation recognized by *Alt*.

F.  The Dissenting Opinion

The dissenting opinion concludes that an administrative hearing officer is empowered to *rule* on a *Pitchess* motion, but may not compel production of personnel records for in camera review before it rules.  (Conc. & dis. opn., *post*, at pp. 11-12.)  It suggests that if the custodian of records *voluntarily* produces the records "with the consent of the officer whose personnel records are sought, the matter is at an end."  (*Id*. at p. 12.)  If the custodian refuses to comply, the party

---

**8**     *People v. Memro* (1985) 38 Cal.3d 658, overruled on another ground in *People v. Gaines* (2009) 46 Cal.4th 172, 181, footnote 2.

21

seeking discovery may seek to have the matter referred to the superior court. Under the dissent's proposal, after such a transfer, the court could then review materials in camera to decide whether it should order discovery and make any protective order. (*Ibid.*)

The dissent cites Evidence Code section 914, subdivision (b), which provides that a person may not be held in contempt for failing to disclose privileged information unless by order of court, and Code of Civil Procedure section 1991, which empowers a hearing officer to report to the superior court a witness's disobedience to a subpoena or refusal to answer a question and to seek a court order compelling compliance. The dissent suggests this scheme applies to *Pitchess* motions before administrative hearing officers. (See conc. & dis. opn., *post*, at pp. 13-15.)

This proposal is inconsistent with the *Pitchess* statutes. Most fundamentally, under the dissent's view, an in camera review of personnel records would no longer be required prior to disclosure. Under the cited scheme of Code of Civil Procedure section 1991, the superior court would become involved only if the custodian of records *refused to comply* with the disclosure order. The dissent asserts that if the custodian voluntarily complies with the disclosure order, "the matter is at an end" without any in camera review by anyone. (Conc. & dis. opn., *post*, at p. 12.)

The Legislature could not have contemplated such a scheme because Evidence Code section 1045 expressly provides that in camera review is *mandatory* before disclosure in every case. As noted, subdivision (b) of that provision requires an examination of the records to exclude complaints about conduct "occurring more than five years" earlier; the conclusions of any investigating officer (in a criminal proceeding); and "[f]acts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit." (Evid.

22

Code, § 1045, subd. (b).) "By providing that the trial court should conduct an in camera review, the Legislature balanced the accused's need for disclosure of relevant information with the law enforcement officer's legitimate expectation of privacy in his or her personnel records." (*Mooc, supra,* 26 Cal.4th at p. 1220, maj. opn. of Werdegar, J.; see *Garcia, supra,* 42 Cal.4th at pp. 69-70.) Nothing in the wording of Evidence Code section 1045 remotely suggests the custodian of records may waive in camera review, much less conduct the required review on its own.

Indeed, in enacting the *Pitchess* statutes, the Legislature amended the bill to specifically eliminate language in earlier versions that made an in camera review optional at the request of the officer or other person who could assert the privilege. (See Sen. Bill No. 1436 (1977-1978 Reg. Sess.) as introduced Jan. 27, 1978, p. 3; Sen. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Apr. 3, 1978, p. 3; Sen. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Apr. 17, 1978, p. 3; Assem. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 7, 1978, p. 3.) Previous versions of the bill also limited discovery to the identities of complainants and witnesses and, in some circumstances, their statements. They also allowed officers an absolute right not to disclose any privileged information notwithstanding a court's finding that it was relevant to the litigation at issue. (See Assem. Com. on Criminal Justice, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) June 5, 1978, p. 2; Assem. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 7, 1978, pp. 4-5.) It was in *this* context that legislative committee reports provided the assurance that "[*a*]*ll requests* for discovery of police personnel records *would require* that before disclosure could be made the judge would have to review, in camera, the records sought, to determine which if any of them are relevant to the litigation" (Assem. Com. on Criminal Justice, Final Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 30, 1978, p. 2, italics

23

added), and "[*a*]*ll requests for discovery would require an in camera hearing* at which the court would determine the relevancy of the material sought" (Assem. Com. on Criminal Justice, analysis of proposed amendments to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 18, 1978, p. 2, italics added, underlining omitted). This history reflects that, in exchange for allowing broader discovery of officer personnel records and eliminating an officer's absolute privilege to foreclose discovery of his files, the Legislature considered an in camera review a pivotal and necessary protection for officers. Thus, contrary to the dissent's suggestion (see conc. & dis. opn., *post*, at p. 8), the focus of the reports was that an in camera *review* would be conducted before disclosure, not on *who* would conduct the review. The legislative history materials, like Evidence Code section 1045 itself, largely assumed a judicial proceeding, and made no mention of any difference in procedure between judicial and nonjudicial proceedings. If the Legislature contemplated a difference, as the dissent posits, one would expect the extensive legislative history would have mentioned it at least once.

The dissent asserts the *Pitchess* statutes "ensur[ed] that *whenever discovery was opposed*, in camera review would follow as a matter of course. ([Evid. Code,] § 1045, subd. (b).)" (Conc. & dis. opn., *post*, at p. 13, italics added.) But Evidence Code section 1045, subdivision (b) says nothing about *contested* motions. It requires a determination of relevance and the conduct of an in camera review to exclude certain categories of information regardless of relevance. Nothing in the language of the statutory scheme suggests the duty to determine relevance may be waived by the custodian of records. The only reference to waiver appears in Evidence Code section 1043, subdivision (c), which provides that "[n]o hearing upon a motion for discovery or disclosure shall be held" without compliance with notice obligations, including notice to the affected officer, "or upon a waiver of the hearing by the governmental agency identified as having the

24

records."  Thus, while the custodian may waive a hearing on whether good cause has been shown, no similar waiver provision appears regarding the duty to find relevance under Evidence Code section 1045.  (See *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1016 [the trial court conducted an in camera review even though the custodian did not oppose the *Pitchess* motion].)

The dissent suggests an "unfortunate consequence" of our approach is that a nonlawyer might preside over the administrative hearing and "the nonparty peace officer will have no input" into his selection.  (Conc. & dis. opn., *post*, at p. 2.)  The dissent further laments that such a person may order disclosure and "formerly confidential records may be opened to inspection."  (*Ibid*.)  These comments find no footing in actual practice.  First, a nonparty officer whose records are sought would *never* have input into who would decide the *Pitchess* motion, be it a court or an arbitrator.  In any case, that concern is completely unfounded here, where the custodian of records, who is obligated to assert the privilege, and the Sheriff's Association, which represents the officer, are involved in the litigation.  Second, it is simply not so that officer records would be "opened to inspection."  (Conc. & dis. opn., *post*, at p. 2.)  As noted, officer records disclosed at these private proceedings remain confidential under Penal Code section 832.7.  (See *Copley Press, supra,* 39 Cal.3th at pp. 1286-1299.)  Further, the *Pitchess* statutes themselves restrict use of such records to the proceeding at issue.  (Evid. Code, § 1045, subd. (e); *Alford, supra,* 29 Cal.4th at pp. 1039-1043.)

The dissent first gleans legislative intent regarding the *Pitchess* statutes from general Evidence Code provisions concerning privileges.  We have already addressed the Evidence Code argument, particularly the applicability of Evidence Code section 915, at pages 15-16, *ante*.

25

Next, the dissent relies on a *repealed* provision of the Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.). Government Code section 11507.6 allows parties in an APA proceeding to request various pretrial discovery from the opposing party. Under Government Code former section 11507.7, if a party failed to comply, the aggrieved party could "file a verified petition to compel discovery in the superior court . . . naming as respondent the party refusing or failing to comply with" pretrial discovery obligations. (Gov. Code, former § 11507.7, subd. (a), added by Stats. 1968, ch. 808, § 5, p. 1562.) The court would thereafter rule on the discovery matter, which included the power to review in camera materials claimed to be privileged. (Gov. Code, former § 11507.7, subds. (d), (e), added by Stats. 1968, ch. 808, § 5, p. 1563.) Pointing to this mechanism, which existed at the time the *Pitchess* statutes were enacted, the dissent asserts that "the Legislature has taken pains historically to identify and limit who may conduct in camera review." (Conc. & dis. opn., *post*, at p. 11.) It suggests the Legislature had these provisions in mind when enacting the *Pitchess* scheme.

This reasoning misses the mark. First, the Legislature has expressly stated that officer personnel records "are confidential and shall not be disclosed in any criminal or civil proceeding *except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code*." (Pen. Code, § 832.7, subd. (a), italics added.) We have affirmed that "[t]he *Pitchess* procedure is the sole and exclusive means" to obtain *Pitchess* discovery, and cases "have rejected attempts to use other discovery procedures to obtain *Pitchess* records." (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 21.) Given the Legislature's adoption of the *Pitchess* statutes as the exclusive method for discovery of these records, it is doubtful the Legislature contemplated that the repealed APA discovery procedure would apply. This is especially true when neither the language nor legislative history of the *Pitchess* statutes makes any reference to the APA.

26

Second, the Legislature could not have contemplated the former APA procedure would apply to *Pitchess* motions in administrative hearings for the same reasons it could not have contemplated application of Code of Civil Procedure section 1991.  Like that procedure, Government Code former section 11507.7 required an aggrieved party to file a discovery motion before the superior court would become involved; if a party complied with the discovery request, the court would never need to rule or view the records in camera.  Again, the dissent fails to explain why the Legislature would have expressly required an in camera review of records before disclosure under Evidence Code section 1045, yet countenanced application of a scheme that would have allowed disclosure of records without such review.

Third, the motion under Government Code former section 11507.7 only applied to discovery violations *by parties*.  (See Gov. Code, former §§ 11507.6 [pretrial discovery obligation of parties], 11507.7, subd. (a).)  By contrast, *Pitchess* motions are directed at "the governmental agency which has custody and control of the records" (Evid. Code, § 1043, subd. (a)), even when the custodian is not a party to the litigation.  The Legislature could not have believed this vastly different scheme would have any application to the *Pitchess* statutes.

Fourth, the Legislature's subsequent amendment of Government Code former section 11507.7 presents strong evidence that the Legislature never believed it applied to the *Pitchess* scheme.  As the dissent acknowledges, the Legislature in 1995, as part of a comprehensive overhaul of the APA (see *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 5), amended Government Code former section 11507.7 to allow an administrative law judge (ALJ) to rule on discovery matters, which included the power to examine privileged materials if necessary to make a ruling.  (See Gov. Code, § 11507.7, subd. (d).)  An ALJ is a specialized arbitrator on staff

with the Office of Administrative Hearings, and the APA requires all hearings under its provisions to be conducted by an ALJ. (Gov. Code, § 11502, subd. (a).)

Under the dissent's view, the 1995 amendment to the APA created a distinction between ALJs and non-ALJ arbitrators. Thus, with respect to a *Pitchess* motion after 1995, an ALJ now *can* conduct an in camera review of records under Evidence Code section 1045, because Government Code section 11507.7 generally gives ALJs the power to review privileged materials in camera, whereas non-ALJ arbitrators cannot. The dissent acknowledges that the Legislature never amended the *Pitchess* statutes to reflect this asserted intent. Indeed, the dissent, in attacking our interpretation of the scheme, makes much of the fact that Evidence Code section 1045 repeatedly uses "the court," and reasons that "the Legislature has been precise in its choice of terminology" and "[w]e should take the Legislature at its word." (Conc. & dis. opn., *post*, at p. 8.) However, after 1995, and to this day, Evidence Code section 1045 still uses "the court," making no reference to ALJs or the APA.

The dissent cannot have it both ways. If the Legislature intended that the 1995 amendment of the APA constituted a substantive modification of the *Pitchess* scheme, such a change would have constituted a significant departure in the law. Yet the dissent posits this major change resulted solely from silent implication. It is doubtful that the Legislature would have instituted such a significant change through silence. While the law can occasionally be subtle, we should avoid constructions that render it delphic. Indeed, the 1995 bill constituted a comprehensive amendment of the APA and numerous related statutes. It amended or added over 100 different laws spanning 16 codes, including not only provisions of the Government, Evidence, and Penal Codes, but sections of the Health and Safety, Business and Professions, Labor, Revenue and Taxation, Welfare and Institutions, Vehicle, Fish and Game, Financial, Education, Military

28

and Veterans, Public Resources, Public Utilities, and Unemployment Insurance Codes as well.  (See Stats. 1995, ch. 938, pp. 7104-7225.)  It is difficult to believe that the Legislature intended the amendment to the APA to change the *Pitchess* statutes, yet chose not to modify them expressly as it did with respect to dozens of other statutes tangentially related to the APA.

Responding to our discussion of Government Code former section 11507.7, the dissent states it "take[s] no position" on the interaction between the repealed APA procedure and the *Pitchess* scheme because "the issue is, after all, long since moot."  (Conc. & dis. opn., *post*, at p. 10.)  The dissent suggests we are imputing to it a position about the applicability of the APA that it has not taken.  (*Id*. at p. 14.)  The dissent misapprehends the import of our discussion.  The dissent asserts that "the Legislature had taken the extraordinary step of creating a special statutory transfer mechanism to allow privilege disputes arising in administrative matters to be resolved by the only body authorized to conduct in camera review, a court."  (*Id*. at p. 1.)  The dissent reasons that the existence of these transfer mechanisms shows "the Legislature took seriously the limits on the powers of nonjudicial officers" (*id*. at p. 5), and, thus, the Legislature's use of "the court" in Evidence Code section 1045 meant only courts are authorized to conduct in camera review.  However, as noted, that transfer mechanisms such as Code of Civil Procedure section 1991 and Government Code former section 11507.7 do not fit the *Pitchess* procedure shows that the Legislature could not have had them in mind when enacting the *Pitchess* statutes.  And the fact that the Legislature did not amend the *Pitchess* statutes in 1995 when granting ALJs authority to conduct in camera review further supports our view that the Legislature did not consider the former APA transfer mechanism when enacting the *Pitchess* scheme.

Rather than gleaning legislative intent from general statutes of questionable applicability, the better view recognizes that the Legislature, by expressly allowing

29

*Pitchess* motions to be filed with an appropriate administrative body under Evidence Code section 1043, contemplated administrative *Pitchess* motions from the very beginning of the scheme. To conclude that administrative hearing officers lack authority to rule on them effectively reads this language out of the statute. If the Legislature intended to keep hearing officers from ruling on such motions, or to require that only courts conduct the in camera review, it certainly could have done so by providing that such motions not be filed before hearing officers, or by expressly creating a transfer mechanism to the superior court. It did neither. Our conclusion harmonizes the *Pitchess* scheme with Evidence Code sections 914 and 915. It is consistent with Penal Code section 832.7 and our holding that the confidentiality of officer personnel records extends to administrative proceedings. Finally, allowing administrative hearing officers to determine *Pitchess* motions in this context furthers the goals of the POBRA and maintains the balance between an officer's interest in privacy and a litigant's interest in discovery. Of course, the Legislature remains free to clarify its intent as to the authority of administrative hearing officers in this context, and to take additional steps to protect the confidentiality of officer personnel records in the administrative context.

## III.  DISPOSITION

The judgment of the Court of Appeal is affirmed.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**WILLHITE, J.   \***

_____

\*      Associate Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

31

**CONCURRING AND DISSENTING OPINION BY WERDEGAR, J.**

I agree with the majority that *Pitchess*[1] discovery can be sought in administrative proceedings. I disagree, however, with the further conclusion that every nonjudicial presiding officer may review privileged and confidential materials in the context of such a motion.

As of the 1970s, when the *Pitchess* discovery scheme was enacted, the Legislature had never entrusted administrative hearing officers with reviewing allegedly privileged and confidential documents to determine their discoverability. Only judicial officers were permitted to examine such documents. The disparity in authority was neither a relic of an older time nor an inadvertent oversight; as recently as 1968, the Legislature had taken the extraordinary step of creating a special statutory transfer mechanism to allow privilege disputes arising in administrative matters to be resolved by the only body authorized to conduct in camera review, a court.

The *Pitchess* discovery scheme continues this regime. At every turn, Evidence Code section 1045,[2] the statute governing in camera review of confidential peace officer records, spells out what a "court" should do, eschewing the broader term "presiding officer" used elsewhere to identify those powers and

---

[1]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[2]     All further unlabeled statutory references are to the Evidence Code.

duties shared by both judges and administrative hearing officers.  Yet the majority concludes the Legislature in enacting the *Pitchess* discovery statutes not only intended the then unprecedented step of empowering administrative officers to conduct in camera privilege review, but took this step sub silentio, using each directive to "the court" to announce what a "court [or any other presiding officer]" should do.  This cannot be what the Legislature intended.

The unfortunate consequence of the majority opinion is this.  Often, the person presiding over an administrative hearing need not be a lawyer and could be whomever the parties choose; the nonparty peace officer will have no input.  On the say-so of such a person, without judicial oversight or any guarantee of a protective order, the peace officer's formerly confidential records may be opened to inspection.  Because the statutory scheme does not compel this regrettable result, I respectfully dissent.

## I.

In 1965, the Legislature first codified in one place the rules of evidence. (Stats. 1965, ch. 299, p. 1297.)  The new Evidence Code adopted largely verbatim the work of the California Law Revision Commission (Commission), which had been asked to study the possibility of conforming the state's evidence rules to a set of nationally proposed uniform rules.  (Stats. 1956, ch. 42, pp. 263, 265; see Recommendation Proposing an Evidence Code (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965) p. 3.)[3]

---

[3]    The Commission's recommendations were delivered to the Legislature, which expressly endorsed the Commission's commentary as reflecting its own intent unless otherwise noted.  (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 333 (1965 Reg. Sess.) 1 Assem. J. (1965 Reg. Sess.) p. 1712; Sen. Com. on Judiciary, Rep. on Assem. Bill No. 333 (1965 Reg. Sess.) 2 Sen. J. (1965 Reg. Sess.) p. 1573.)  Consequently, "with respect to unchanged sections of the Evidence Code the commission's comments state the intent of the Legislature

*(footnote continued on next page)*

With respect to privilege issues, the Commission recognized that questions of privilege might arise in a broad range of proceedings and sought to "remove the existing uncertainty concerning the right to claim a privilege in a nonjudicial proceeding." (Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code (2009 ed.) foll. § 910, p. 217.) The policy served by privileges would be seriously undermined if "[e]very officer with power to issue subpoenas for investigative purposes, every administrative agency, every local governing board, and many more persons could pry into the protected information . . . ." (*Id.* at p. 216.) Accordingly, the Commission proposed, and the Legislature enacted, an explicit declaration that privilege protections would apply equally to judicial, administrative, and other proceedings. (§§ 901, 910.)

Equally important to protecting confidentiality, the new Evidence Code articulated procedures for how privilege claims would be resolved in nonjudicial proceedings. In general, "presiding officer[s]," broadly defined to include not only judicial officers but also arbitrators and anyone else overseeing a nonjudicial proceeding, could "determine a claim of privilege in any proceeding in the same manner as a court determines such a claim" under the Evidence Code. (§ 914, subd. (a); see § 905 [defining " 'Presiding officer' "]; Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code, *supra*, foll. § 905, at p. 215.) However, the authority to determine a claim of privilege was subject to two significant limits. First, only a "court," not just any presiding officer, could "require the person from whom disclosure is sought or the person authorized to

---

*(footnote continued from previous page)*

regarding those sections." (*Arellano v. Moreno* (1973) 33 Cal.App.3d 877, 884.) This principle applies fully to each section I discuss.

3

claim the privilege, or both, to disclose the information in chambers . . . ." (§ 915, subd. (b).) The consequence of this was quite clear: the narrow authorization for in camera review "applies only when a court is ruling on the claim of privilege. Thus, in view of [§ 915,] subdivision (a), disclosure of the information cannot be required, for example, in an administrative proceeding." (Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code, *supra*, foll. § 915, at p. 256.) Nonjudicial in camera review remained forbidden. (See *ibid.* [the statute's broad limits on in camera review "codif[y] existing law"].)**4**

Second, recognizing the risk of error inherent in having nonjudicial officers make privilege determinations, the Commission and Legislature withheld the power to issue enforceable orders on privilege matters. Orders to disclose issued by such officers carried no risk of contempt for noncompliance. (§ 914, subd. (b).) Instead, parties seeking discovery needed a court order compelling disclosure. (*Ibid.*; see Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code, *supra*, foll. § 914, at p. 254 ["What is contemplated is that, if a claim of privilege is made in a nonjudicial proceeding and is overruled, application must be made to a court for an order compelling the witness to answer."].) This detour to court was necessary "to protect persons claiming privileges in nonjudicial proceedings. Because such proceedings are often conducted by persons untrained in law, it is desirable to have a judicial determination of whether a person is required to disclose information claimed to be privileged before he can be held in contempt

---

**4**     Stressing the importance of section 915's safeguards, the Commission explained in camera disclosure will frequently be wholly prohibited, and even when it is allowed, "[s]ection 915 undertakes to give adequate protection to the person claiming the privilege by providing that the information be disclosed in confidence to the judge and requiring that it be kept in confidence if it is found to be privileged." (Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code, *supra*, foll. § 915, at p. 256.)

for failing to disclose such information." (Cal. Law Revision Com. com., at p. 254.)

In 1968, the Legislature codified procedures for discovery in proceedings under the Administrative Procedure Act (APA). (Stats. 1968, ch. 808, § 3, p. 1561; *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 21.) As discussed, at the time all nonjudicial officers were prohibited from conducting in camera review of assertedly privileged documents. (§ 915.) Rather than lift this prohibition, the Legislature authorized the filing of a freestanding "verified petition to compel discovery in the superior court for the county in which the administrative hearing will be held, naming as [a] respondent the party" refusing to provide discovery. (Gov. Code, former § 11507.7, subd. (a), enacted by Stats. 1968, ch. 808, § 5, p. 1562.) Former section 11507.7 expressly granted a court the authority nonjudicial officers lacked: the power to review in camera the assertedly privileged administrative discovery materials under the rules set out in section 915 of the Evidence Code. (Gov. Code, former § 11507.7, subd. (d); Stats. 1968, ch. 808, § 5, pp. 1562, 1563.) Plainly, the Legislature took seriously the limits on the powers of nonjudicial officers.

This, then, was the landscape in 1978 when the Legislature enacted the *Pitchess* discovery statutes. Claims of privilege could be raised in judicial and nonjudicial settings alike. (§ 910.) Courts and nonjudicial presiding officers could rule on these claims. (§ 914, subd. (a).) Courts had authority to rule on claims of privilege following in camera review. (§ 915, subd. (b).) Presiding officers, other than court judges, did not; they were required to issue rulings without directly inspecting assertedly privileged materials. (*Id.*, subd. (a); see § 905 [defining " 'Presiding officer' "].) Moreover, compliance with nonjudicial privilege rulings was not inherently compulsory. (§ 914, subd. (b).) Persons possessing assertedly privileged documents could not be required to allow

5

nonjudicial officers to examine them and could not be forced to disclose them without review by an actual court.

The statutory scheme offered a path to resolution of any privilege dispute by the only entity entrusted to conduct in camera review and issue binding rulings—the court. If discovery was sought and refused on grounds of privilege in a proceeding covered by the APA, the party seeking discovery could file a petition in superior court under Government Code former section 11507.7 and have the court proceed with in camera review and a determination whether disclosure should be required. (See Gov. Code, former § 11507.7, subds. (d), (e); Stats. 1968, ch. 808, § 5, p. 1563.) In proceedings not covered by the APA, application to a court for an order compelling discovery was also necessary. In the absence of any more specifically applicable statutory procedure, such as Government Code former section 11507.7, the Legislature directed parties to use "the procedure prescribed by Section 1991 of the Code of Civil Procedure" to obtain such an order. (Evid. Code, § 914, subd. (b); see Code Civ. Proc., § 1991 [granting superior courts jurisdiction to issue orders compelling discovery].)

## II.

In *Pitchess*, *supra*, 11 Cal.3d 531, 535–540, we recognized a right to discovery of relevant peace officer records, subject only to a court's balancing under section 1040 the interest in disclosure against the interest in confidentiality. The Legislature responded by creating a new statutory peace officer privilege. (Stats. 1978, ch. 630, § 5, p. 2083.) Henceforth, peace officer records were to be deemed confidential, and were to be discoverable solely to the extent authorized by newly enacted section 1043 et seq. (Pen. Code, § 832.7, subd. (a).)

Section 1043 explains how to obtain peace officer records discovery. (See generally *Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1038–1039; *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 82–83.) The party seeking

6

disclosure must file "a written motion with the appropriate court or administrative body." (§ 1043, subd. (a).) Notice must be given to the custodian of records, who will notify the party whose records are sought. (*Ibid*.) The motion must be supported by evidence establishing "good cause" for discovery, including a showing that the evidence sought would be material and reason to believe the identified government agency has records of the type sought. (*Id.*, subd. (b)(3).) A hearing is required absent waiver by the governmental agency with custody. (*Id.*, subd. (c).)

Section 1045 further authorizes a "court" to determine relevance by examining records "in chambers in conformity with Section 915." (§ 1045, subd. (b).) The "court" may exclude certain irrelevant and outdated matters (*ibid.*), "make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment, or oppression" (*id.*, subd. (d)), and issue protective orders (*id.*, subd. (e)).

As an initial matter, the text plainly authorizes *Pitchess* discovery in nonjudicial proceedings. Section 1043, subdivision (a) expressly allows motions before "administrative bod[ies]," and we must give this language its natural and obvious meaning.

Nothing in the text of section 1043 or section 1045, however, relaxes the settled limits on the power of nonjudicial officers, who may neither compel disclosure in the face of privilege claims nor demand in camera disclosure. (See §§ 914, subd. (b), 915, subd. (b).) Nor does anything suggest the Legislature was any less concerned about those limits here, or intended to make the new peace officer privilege less secure against nonjudicial abrogation than other existing privileges. Throughout section 1045, the Legislature uses the specific term "court," not the broader term "presiding officer," to identify who is authorized to

7

conduct in camera review—a distinction that comports with what was then the firmly established practice.  We should take the Legislature at its word.

Of note, the Legislature has been precise in its choice of terminology elsewhere in the Evidence Code and, indeed, in the very legislation at issue.  (See §§ 905 [specially defining " 'Presiding officer' " to encompass all hearing officers, as distinct from judges or courts], 914 [making distinct and differential use of the terms "presiding officer" and "court"], 915 [same], 1043 [referring to a "court *or* administrative body" (italics added)].)  We should not lightly presume the Legislature was any less precise in section 1045.  If it had meant "presiding officer," the term the majority's interpretation effectively reads into the statute in place of "court," it would have said so.  (Cf. § 914, subd. (a) [using the term "presiding officer" to explicitly grant nonjudicial hearing officers authority to conduct privilege hearings under § 400 et seq.].)  Indeed, the commentary to section 914 notes that express authorization for nonjudicial hearing officers to conduct privilege hearings was "necessary because Sections 400–406, by their terms, apply only to determinations by a court."  (Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code, *supra*, foll. § 914, at p. 254.)  When the Legislature has written a statute to extend power only to a "court," it knows that statute does not extend power to every nonjudicial "presiding officer."  And when the Legislature intends to extend new powers to nonjudicial officers, it knows how to do so expressly.

The legislative history supports the plain meaning of the text.  The purpose of the new statutes was to "protect peace officer personnel records from discovery in civil or criminal proceedings" (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1436 (1977–1978 Reg. Sess.) as amended Apr. 3, 1978, p. 1) by creating a new privilege limiting their disclosure (*id.* at pp. 4–5).  In committee report after committee report, assurances were offered that peace officers could not be forced

8

to surrender this newly created privilege until a judge had reviewed materials in camera.  (E.g., *id.* at pp. 3–5; Assem. Com. on Criminal Justice, Analysis of Sen. Bill No. 1436 (1977–1978 Reg. Sess.) as amended Aug. 7, 1978, p. 2; Assem. Com. on Criminal Justice, Analysis of Sen. Bill No. 1436 (1977–1978 Reg. Sess.) Final Analysis, pp. 1–2.)[5]  These guarantees mirror the recognition in connection with section 914 that only a judicial determination could support compelled disclosure of privileged materials.  (See Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code, *supra*, foll. § 914, at p. 254.)

That the Legislature knows how to authorize nonjudicial officers to conduct in camera review of privileged documents, and says so expressly when that is its intent, is further illustrated by how the Legislature later handled nonjudicial privilege review under the APA.  In 1995, in response to recommendations from the Commission, the Legislature substantially updated and modernized the APA.  (Stats. 1995, ch. 938, p. 7104; see *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2006) 40 Cal.4th 1, 8–9.)  Among the proposed changes the Legislature enacted verbatim were revisions to the act's discovery provisions.  Whereas under then existing law, "discovery disputes between the parties [were] referred to the superior court for resolution and enforcement," the Commission sought to "expedite the discovery process" by "vest[ing] resolution of discovery disputes in the administrative law judge."  (Recommendation: Administrative Adjudication by State Agencies (Jan. 1995) 25

---

[5]     The majority is quite right to note no special focus was placed on who would conduct the review (maj. opn., *ante*, at p. 24), the reason being no special focus was *needed*; the various bill analyses, like the text of section 1045, carried forward the assumption that had always been true, that in camera review was something done only by courts and judges.  If the Legislature contemplated a departure from that well-established practice, as the majority posits, one would expect the legislative history to so indicate.  Instead, there is only silence.

Cal. Law Revision Com. Rep. (1995) pp. 55, 116.) Government Code section 11507.7 was revised to allow administrative law judges to do what previously only courts had done, including, with respect to privilege claims, authorizing for the first time an "administrative law judge [to] order lodged with it matters provided in subdivision (b) of Section 915 of the Evidence Code and examine the matters in accordance with its provisions." (Gov. Code, § 11507.7, subd. (d).) This new authority eliminated any need for a transfer mechanism to bring every APA discovery dispute before a court; accordingly, the freestanding petition previously authorized by section 11507.7 was eliminated. (See Gov. Code, § 11507.7, subd. (a) [motion to compel may be filed directly with the administrative law judge].)

Curiously, the majority imputes to me the view that a Government Code former section 11507.7 petition would necessarily have provided the mechanism for *Pitchess* discovery, then refutes that asserted view at length. (Maj. opn., *ante*, at pp. 25-27.) But I take no position on how a former section 11507.7 petition and the *Pitchess* statutes might have interacted; the issue is, after all, long since moot. For present purposes, the significance of Government Code former section 11507.7, and of the current version of that same statute, is simply this: when it comes to withholding or granting in camera powers to nonjudicial hearing officers, the Legislature has acted intentionally and explicitly. We cannot fairly assume that uniquely, in Evidence Code section 1045, it acted inadvertently and implicitly.

Turning the interpretive question on its head, the majority asks whether section 1045 contains a *limit* on who may act. The majority argues that section 1045 at most "implicitly" withholds from nonjudicial hearing officers the power to conduct in camera review (maj. opn., *ante*, at p. 7, italics omitted), and references to " 'the court' " in that statute should not be read "as a coded expression of legislative intent to substantively limit who may rule on *Pitchess* motions" (maj. opn., *ante*, at p. 15). But there is nothing implicit or coded about the statute. Its

10

designation of who may conduct in camera review and issue appropriate protective and other orders is explicit and plain: "the court." (§ 1045, subds. (b), (c), (d), (e).) When the Legislature intends a grant of authority to a broader group, it has available, and uses, a different and more encompassing term: "presiding officer." (See §§ 905, 913–916, 919.) More fundamentally, the issue here is not whether section 1045 contains a limit on who may act. Rather, given that until 1995, when the Legislature amended the APA, only a judicial officer had the express power to conduct in camera review, the relevant inquiry ought to be whether section 1045 contains an unprecedented affirmative grant of such authority to a nonjudicial officer. By its terms, the statute does not.

The Legislature has taken pains historically to identify and limit who may conduct in camera review. Nothing in the text or history of the *Pitchess* discovery statutes authorizes us to undo that effort. We should honor the language the Legislature has chosen by giving it effect.

### III.

If, as I conclude, section 1043 allows administrative discovery but section 1045 does not authorize administrative in camera review, the further question is how the statutory scheme, correctly applied, would operate here.

As noted, this dispute arises in a non-APA proceeding; no administrative law judge is involved, and nonjudicial officers other than administrative law judges have no power to issue protective orders, nor any authority to conduct in camera review. (§ 915, subd. (b); cf. Gov. Code, §§ 11511.5, subds. (b)(7), (e), 11507.7, subd. (d).) Section 1043, subdivision (c), however, authorizes any administrative body presented with a peace officer records discovery motion to conduct a hearing. At that hearing, the nonjudicial presiding officer may consider the arguments and evidence in favor of and against whether the requested information is material and likely to be possessed by the identified custodian of

11

records, and may rule on whether a showing has been made to warrant discovery. (See § 1043, subd. (b)(3).)  Although the nonjudicial officer may not order in camera disclosure to assist in this determination (see § 915, subd. (b)), this is hardly unusual; the Evidence Code has always called on nonjudicial presiding officers to rule on privilege matters without examining the assertedly privileged documents (§§ 914, subd. (a), 915; see *Southern Cal. Gas Co. v. Public Utilities Com.* (1990) 50 Cal.3d 31, 45, fn. 19).  Privilege determinations nevertheless can be rendered based on all other available evidence.  (See *United States v. Reynolds* (1953) 345 U.S. 1, 8–11; *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 737.)

As has also always been the case, a nonjudicial order directing discovery is not self-executing.  If the custodian of records voluntarily complies, with the consent of the officer whose personnel records are sought, the matter is at an end. If the custodian does not comply, or the party seeking discovery believes compliance has been only partial, no immediate sanction is available, but the party requesting discovery may seek referral of the matter to the superior court in the county where the administrative proceeding is ongoing.  (§ 914, subd. (b); Code Civ. Proc., § 1991.)  At this point, the provisions of Evidence Code section 1045 come into play; a court asked to enforce a nonjudicial order for section 1043 *Pitchess* discovery can review materials in camera to decide whether to issue a court order directing discovery, as well as a protective order (§ 1045, subd. (e)) or any other order "which justice requires" (*id.*, subd. (d)).

The majority criticizes this view of the governing statutes as permitting compelled discovery without in camera review, as required by section 1045.  To the contrary, unlike the majority construction, this view ensures in camera review, in all cases where discovery is contested, by the entity authorized to do such review—"the court."  Nothing in the statutory text or history supports the view the

12

Legislature intended the contemplated protections to apply even in the rare hypothetical instance where a privilege holder might have no objection and waive the privilege.

To support its view that "shall examine" in section 1045 means "shall examine" even when the privilege is waived and disclosure uncontested, the majority points to earlier unenacted versions of the *Pitchess* discovery legislation that made in camera review optional by placing a burden on the privilege holder to affirmatively seek in camera review. (Maj. opn., *ante*, at pp. 23-24; e.g., Assem. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 7, 1978, p. 3 ["In determining relevance, the court shall, at the request of any person authorized to claim the privilege, examine the information in chambers in conformity with Section 915 . . ."].) The enacted version lifted that burden, ensuring that whenever discovery was opposed, in camera review would follow as a matter of course. (§ 1045, subd. (b).) To interpret this change as also compelling review in uncontested cases, and the new privilege as unwaivable even by the holder, lacks any basis.

The majority also would find no statute currently authorizes transfer of a discovery dispute from a nonjudicial setting to a judicial setting, and in the absence of such a mechanism would read broad new powers for nonjudicial officers into section 1045. Given a choice between disregarding the plain text of section 1045, on the one hand, and reading section 914, subdivision (b) and Code of Civil Procedure section 1991 as collectively allowing a court to act on discovery disputes arising before nonjudicial officers, on the other, I would choose the latter course, the one that gives effect to the text of each relevant statute and accords with the Legislature's long-standing desire "to protect persons claiming privileges in nonjudicial proceedings" from having to surrender those privileges at the sole behest of nonjudicial officers. (Cal. Law Revision Com. com., 29B pt. 3A

13

West's Ann. Evid. Code, *supra*, foll. § 914, at p. 254.) Far from reading *Pitchess* discovery in administrative hearings out of section 1043, this approach embraces such discovery. Moreover, unlike the majority's approach, it does so without also sacrificing equally significant protections for privileged information expressly codified in the in camera review provisions of section 1045.

Here, the majority again imputes to me, and then refutes, a position I do not assert in connection with a scenario not before us: that if this were an APA proceeding, the appropriate course necessarily would be to seek discovery under Government Code section 11507.7, rather than under Code of Civil Procedure section 1991. (See maj. opn., *ante*, at p. 27 [first imputing this imagined view and then using it to claim "[t]he dissent cannot have it both ways"].) Because this case does not involve the APA, neither I nor the majority need sort out which would be the correct course in such a proceeding. Concerning the non-APA proceeding that *is* before us, and the demonstration that *Pitchess* discovery can be had without violating the general rule against nonjudicial in camera review, the majority is largely silent.

14

## IV.

Applying the foregoing framework to the instant case, I agree with the majority and the Court of Appeal that former Deputy Kristy Drinkwater can seek *Pitchess* materials through a motion filed with the nonjudicial hearing officer reviewing her termination. I cannot agree that the nonjudicial officer has authority to demand their production for in camera review. To so hold unjustifiedly eviscerates the protections in sections 914, 915, and 1045 that ensure judicial officers, and judicial officers alone, will conduct privilege review. Instead, any determination that good cause for discovery has been shown should be followed, in the absence of voluntary compliance, by a request for a court order enforcing discovery under section 914, subdivision (b), and Code of Civil Procedure section 1991.

I respectfully dissent.

**WERDEGAR, J.**


**I CONCUR:**

**BAXTER, J.**

15

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Riverside County Sheriff's Department v. Stiglitz

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 209 Cal.App.4th 883
**Rehearing Granted**

_____

**Opinion No.** S206350
**Date Filed:** December 1, 2014

_____

**Court:** Superior
**County:** Riverside
**Judge:** Mac R. Fisher

_____

**Counsel:**

Hayes & Cunningham, Dennis J. Hayes, Adam E. Chaikin and Amanda K. Hansen for Intervener and Appellant.

Stone Busailah, Michael P. Stone, Muna Busailah, Melanie C. Smith, Robert Rabe and Travis M. Poteat for Real Party in Interest and Appellant and Real Party in Interest and Respondent.

Lackie, Dammeier & McGill and Michael A. Morguess for Peace Officers' Research Association of California Legal Defense Fund as Amicus Curiae on behalf of Intervener and Appellant, Real Party in Interest and Appellant and Real Party in Interest and Respondent.

Silver, Hadden, Silver, Wexler & Levine, Richard A. Levine, Brian P. Ross and Michael Simidjian for Los Angeles Police Protective League as Amicus Curiae on behalf of Intervener and Appellant, Real Party in Interest and Appellant and Real Party in Interest and Respondent.

Green & Shinee, Richard A. Shinee and Helen L. Schwab for Association for Los Angles Deputy Sheriffs as Amicus Curiae on behalf of Intervener and Appellant, Real Party in Interest and Appellant and Real Party in Interest and Respondent.

Law Office of James E. Trott and James E. Trott for Association of Orange County Deputy Sheriffs, Long Beach Police Officers Association and Southern California Alliance of Law Enforcement as Amici Curiae on behalf of Intervener and Appellant, Real Party in Interest and Appellant and Real Party in Interest and Respondent.

Ferguson, Praet & Sherman, Jon F. Hamilton, Kimberly A. Wah and Bruce D. Praet for Plaintiff and Respondent.

Kathleen Bales-Lange, County Counsel (Tulare) and Crystal E. Sullivan, Deputy County Counsel, for California State Association of Counties and California League of Cities as Amici Curiae on behalf of Plaintiff and Respondent.

Jones & Mayer, Martin J. Mayer, Gregory P. Palmer and Krista MacNevin Jee for California State Sheriffs' Association as Amicus Curiae on behalf of Plaintiff and Respondent.

No appearance for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Michael P. Stone
Stone Busailah
200 East Del Mar Boulevard, Suite 350
Pasadena, CA  91105
(626) 683-5600

Bruce D. Praet
Ferguson, Praet & Sherman
1631 E. 18th Street
Santa Ana, CA  92705-7101
(714) 953-5300