Filed 8/22/16

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S223129 |
| v. | ) | |
| | ) | Ct.App. 6 H038588 |
| ADAM SERGIO RODRIGUEZ, | ) | |
| | ) | Santa Clara County |
| Defendant and Appellant. | ) | Super. Ct. No. C1110340 |
| _____ | ) | |

Criminal defendants routinely file motions at the outset of their cases to suppress the evidence against them. When a judge grants such a motion, the prosecution may decide to dismiss the case and refile charges. But if the prosecution does refile such charges, Penal Code section 1538.5, subdivision (p)[1] provides that any suppression motion the defendant subsequently files must be heard by the "same judge" who granted the prior motion so long as that judge is "available." The question before us is whether trial courts are vested with discretion to decide whether a judge is available under section 1538.5(p), and if so, what limitations constrain that discretion.

What we hold is that although trial courts possess broad discretion to distribute business within their courts and make determinations concerning the

---

[1] Subsequent unlabeled statutory references are to the Penal Code, and subsequent textual references to section 1538.5's subdivisions shall take the following form: section 1538.5(a), section 1538.5(p), etc.

SEE CONCURRING OPINION

availability of judges, that discretion must be exercised in a manner consistent with constraints imposed by section 1538.5(p). In light of the statute's text, as well as its purpose of prohibiting prosecutorial forum shopping, the trial court's discretion should be exercised in accordance with the following understanding: A judge may be found unavailable for purposes of section 1538.5(p) only if the trial court, acting in good faith and taking reasonable steps, cannot arrange for that judge to hear the motion. The trial court must make its finding of unavailability on the record.

Because the trial court below did not take reasonable measures to ensure compliance with section 1538.5(p), we find an abuse of discretion. And because the resulting error was prejudicial, we reverse the judgment of the Court of Appeal and remand the case with directions that the Court of Appeal instruct the trial court to determine on the record whether the relevant judge is now available.

## I. BACKGROUND

On February 24, 2010, the People filed a complaint in Santa Clara County Superior Court charging defendant Adam Sergio Rodriguez with one count of possession of child pornography (§ 311.11, subd. (a)) and one count of misdemeanor marijuana possession (Health & Saf. Code, § 11357, subd. (c)). On September 1, 2010, Rodriguez moved under section 1538.5(a) to suppress all evidence seized from his desktop computer, arguing that this evidence was obtained after police had entered Rodriguez's home without a warrant or proper consent. Judge Diane Northway, sitting as a magistrate, denied this motion and held Rodriguez to answer.

Rodriguez filed a renewed suppression motion in superior court on January 3, 2011, pursuant to section 1538.5(i), which permits a defendant who "was held to answer at the preliminary hearing" to "renew or make the motion [to suppress] at a special hearing relating to the validity of the search or seizure." Judge

2

Vincent Chiarello granted the renewed motion on May 2, 2011, finding that statements made by police outside Rodriguez's home rendered any consent to search the premises involuntary. The suppressed evidence included images and video footage of child pornography obtained from Rodriguez's desktop computer. Also inadmissible was a subsequent search warrant — a fruit of the initial encounter — that resulted in further forensic analysis of Rodrigez's computer, as well as statements he made to police during the execution of that search warrant. The case was dismissed at the People's request.

The People then filed a new complaint on July 11, 2011, alleging the same offenses. Rodriguez filed a motion to suppress, contending that the "Proper Venue for This Motion" was before Judge Chiarello pursuant to section 1538.5(p) because Judge Chiarello was the "same judge" who had granted Rodriguez's previous motion. In conjunction with his suppression motion, Rodriguez also filed a "Request For Calendar Setting," which asked that the motion be assigned to Judge Chiarello.

The People opposed assignment to Judge Chiarello. In a hearing before Presiding Judge Jerome Nadler, in San Jose, the court denied Rodriguez's request to have Judge Chiarello hear this latest suppression motion. The court explained its decision thus: "Well, counsel, I don't agree with your interpretation that it needs to go back to Judge Chiarello by law. Furthermore, Judge Chiarello is not available to me any longer; he's been transferred to another division, in Palo Alto." Judge Nadler continued: "And judges are -- mine is a limited jurisdiction Court – I hate to say it – and so departments make themselves available when they're available to me, with the exception of Department 54, who's Judge Del Pozzo, who's assigned full time to my division, or to take Preliminary Examination matters. Everyone else volunteers for that assignment on an availability basis. [¶] So I'm not sure who's going to be available on October

27th at 8:32 when this matter is set for Preliminary examination and now 1538.5. [¶] It will just have to go out to whatever Judge is available on that date."

The matter then came before Judge Vanessa Zecher, sitting as a magistrate, for preliminary hearing in San Jose on December 8, 2011. Rodriguez opposed the assignment to Judge Zecher, arguing again that under section 1538.5(p) Judge Chiarello should hear the motion to suppress. The People disagreed. Judge Zecher sent the parties back to Judge Nadler to argue the matter. After considering the parties' arguments, Judge Nadler reaffirmed his prior conclusion: "Judge Chiarello has a sentencing calendar today in Palo Alto[2] and, therefore, [is] not available for this prelim. [¶] This matter is reassigned to Judge Zecher for prelim right now." The parties returned to Judge Zecher, who on December 13, 2011, denied Rodriguez's motion to suppress and held him to answer on count 1, the child pornography charge. Count 2, for marijuana possession, was dismissed.

Dissatisfied with these rulings, Rodriguez filed a renewed motion to suppress pursuant to section 1538.5(i) on February 8, 2012, seeking review in superior court. Rodriguez sought to set aside Judge Zecher's order holding him to answer and reiterated that Judge Chiarello should have heard the relitigated motion to suppress. This time, the People conceded the motion should have been heard by Judge Chiarello, not Judge Zecher, because "Judge Chiarello was available" even though "he had been transferred to another department of the Superior Court." But according to the People, the appropriate vehicle for challenging Judge Zecher's rulings was a section 995 motion. Rodriguez ultimately withdrew his motion after the trial court concluded a renewed motion to

---

2       The Palo Alto courthouse is about 15 miles from San Jose.

4

suppress under section 1538.5(i) was not the proper vehicle for setting aside Judge Zecher's holding order.

Instead, Rodriguez moved on March 6, 2012, to set aside the information under section 995. He argued that because his motion to suppress had been heard by Judge Zecher — and not Judge Chiarello — he had been deprived of a substantial right, for which the proper remedy was to set aside the information. The People opposed the motion, asserting that Rodriguez's decision to bring his motion to suppress in conjunction with the preliminary hearing — rather than waiting to bring the motion until *after* the hearing — removed the situation from the ambit of section 1538.5(p), which contains no requirement that the same judge preside over any subsequent preliminary hearing. Judge Linda Clark denied Rodriguez's motion on March 28, 2012.

In so doing, however, Judge Clark invited Rodriguez to file yet another section 1538.5(i) motion to the extent he wanted review of Judge Zecher's denial of the relitigated motion to suppress. Rodriguez did so. The People opposed the motion to suppress, which Judge Clark denied on April 25, 2012.

With no more suppression motions to file, Rodriguez waived his right to a jury trial on May 7, 2012. Four days later, Judge Chiarello conducted a bench trial in Palo Alto. He found Rodriguez guilty of the single child pornography charge, suspended imposition of sentence, and placed Rodriguez on three years' felony probation, subject to various terms and conditions.

The Court of Appeal affirmed. At the outset, the Court of Appeal concluded that section 1538.5(p) grants the trial court discretion to determine whether a judge is available. The Court of Appeal then concluded that Judge Nadler's "wholly discretionary" authority, as presiding judge, to assign motions to different superior court judges justified the conclusion that Judge Chiarello was not available because he was in Palo Alto hearing other matters.

5

Rodriguez petitioned this court, and we granted review.

## II. DISCUSSION

Trial courts operate according to norms that confer substantial discretion in the conduct of judicial business. (See *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 ["It is . . . well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them. . . . 'That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice' "].) But trial court procedures are also subject to certain statutory constraints. Section 1538.5(p), for instance, provides: "If a defendant's motion to return property or suppress evidence in a felony matter has been granted twice,[3] the people may not file a new complaint or seek an indictment in order to relitigate the motion or relitigate the matter de novo at a special hearing as otherwise provided by subdivision (j), unless the people discover additional evidence relating to the motion that was not reasonably discoverable at the time of the second suppression hearing. *Relitigation of the motion shall be heard by the same judge who granted the*

---

**3**    Although the requirement that a subsequent suppression motion be heard by the same judge who granted the previous motion appears in a subdivision that also addresses third suppression motions, courts have held that the requirement applies to second suppression motions as well. (See *Soil v. Superior Court* (1997) 55 Cal.App.4th 872, 880 (*Soil*) [concluding "that the language in question must be construed as applying to all relitigations, not just to suppression motions which have been heard two times"].) The People here do not argue otherwise. (See *People v. Superior Court (Jimenez)* (2002) 28 Cal.4th 798, 806, fn. 2 (*Jimenez*) [describing *Soil*'s rejection of the People's argument there that "the requirement that the same judge rehear the motion applied only when the motion had already been granted twice," and noting that "[t]he People do not renew that argument here"].)

*motion at the first hearing if the judge is available*." (Italics added.) It is this last portion of the statute that concerns us.

The phrase "if the judge is available" immediately underscores the extent to which this case implicates a trial court function that is traditionally considered discretionary in nature — namely, the authority to determine which judge will hear what. (See *Anderson v. Phillips* (1975) 13 Cal.3d 733, 737 (*Anderson*).) The Legislature routinely recognizes the discretion of trial courts, at times explicitly vesting them with it. (See, e.g., § 1054.7 ["In its discretion, the trial court may after trial and conviction, unseal any previously sealed matter"].) The statute at issue in this case also bears on how trial courts protect a defendant's right to have a subsequent suppression motion heard by the same judge who granted the previous one. The critical inquiry is how we interpret the five words at the end of section 1538.5(p), and how much flexibility we conclude those words afford trial courts in implementing the statutory scheme in light of the discretion they ordinarily possess when assigning work to judicial officers. Given the stakes both for trial courts and defendants, we must in this case consider how to harmonize the need for (and existence of) trial court discretion, while at the same time reflecting on how to make sense of a statutory provision that appears, on its face, to constrain how that discretion is exercised.

**A. The Nature of Discretion**

The parties agree that trial courts possess some amount of discretion to determine whether the same judge who granted a defendant's previous motion to suppress is available to hear the subsequent motion. What their disagreement concerns is whether any limits exist on that discretion, given the explicit language of section 1538.5(p). According to the People, the statute does not purport to limit a trial court's broad discretion, typically exercised by a presiding judge, to make

7

judicial assignments. Rodriguez, by contrast, argues that the trial court's discretion is more circumscribed because the Legislature's intended purpose in enacting the relevant portion of section 1538.5(p) was to prohibit prosecutorial forum shopping. As a result, Rodriguez maintains, the phrase "if the judge is available" should be construed as a narrow exception to the statute's general rule that a subsequent suppression motion "shall be heard by the same judge" who granted the previous one.

As a matter of routine institutional practice, the authority to determine whether a particular judge is available resides with the trial court and its presiding judge. Section 1538.5(p) does not explicitly say as much. But its language is best understood to imply that *someone* must decide whether the sought-after judge is indeed available. And even a rudimentary survey of the relevant institutional rules would suggest that trial courts — more specifically, their presiding judges — should be the ones making the availability determination as part of their statutorily prescribed responsibility to distribute business within their courts. (See Gov. Code, § 69508, subd. (a) [vesting presiding judges with the authority to "distribute the business of the court among the judges" and to "prescribe the order of business"]; Cal. Rules of Court, rule 10.603(b)(1)(A) & (B) [authorizing presiding judges to "[a]ssign judges to departments" and "[a]pportion the business of the court, including assigning and reassigning cases to departments"].)

The proceedings below aptly illustrate this norm. Rodriguez, invoking his statutory right under section 1538.5(p), requested that Judge Chiarello be assigned to hear his relitigated suppression motion. That request was entertained by Judge Nadler, who then, as presiding judge, made the determination that Judge Chiarello was not available to hear Rodriguez's motion because he was in Palo Alto for a sentencing calendar. This chain of events generally comports with how we expect a criminal defendant would request that a trial court honor his or her section

8

1538.5(p) right.  (See *Beck v. Superior Court* (1942) 20 Cal.2d 77, 80 [explaining that new trial motions under Code of Civil Procedure section 661, which generally requires that " 'the [same] judge who presided at the trial" hear the motion unless unable to do so, are "set for hearing by order of [the trial] court' "].)

Such requests arise against the backdrop of trial courts' institutional decisions to allocate work in accordance with an eclectic range of constraints as well as concerns.  Given the existence of different trial courts with different needs — in some counties, involving dozens of judges and multiple locations — we have emphasized the need for courts to have particularly broad discretion in the exercise of such managerial functions.  (See *Anderson*, *supra*, 13 Cal.3d at p. 737 [describing a presiding judge's authority to make ordinary judicial assignments as "wholly discretionary"].)  Yet that managerial authority is not necessarily immune from any constraints or review.  In *Anderson*, for instance, the petitioner had been appointed to fill a vacancy on the Alameda County Superior Court, and sought a writ of mandate to compel the presiding judge to assign him judicial duties.  (*Id.* at p. 735.)  We held that although the petitioner may not compel the presiding judge to assign him judicial duties, the petitioner was nevertheless entitled to require that the presiding judge exercise his discretion to determine whether such assignments should be made.  (*Id.* at pp. 735-736.)  A writ of mandate, we explained, is an appropriate vehicle for compelling an officer to exercise his or her discretion and to do so "under a proper interpretation of the applicable law." (*Id.* at p. 737.)  We concluded that if the presiding judge's refusal to assign court business was based on a determination that the petitioner was no longer a judge of the Alameda County Superior Court, "the writ will lie if that determination is erroneous." (*Ibid.*; see also *Hollman v. Warren* (1948) 32 Cal.2d 351, 356 [Governor's discretion under Government Code section 8200 to "appoint notaries in such

9

number as he deems necessary" did not mean the Legislature left it "to the whim or caprice of the governor as to whether there should be any notaries appointed"].)

What these examples indicate is that the authority to determine whether a particular judge is available does not plainly fall into a category of unconstrained trial court discretion, assuming such a category even exists. (See Black's Law Dict. (10th ed. 2014) p. 565, col. 2 (Black's 10th ed.) [defining "discretion" as, inter alia, "[w]ise conduct and management exercised *without constraint . . .*" (italics added)].) Rather, courts' discretion to administer their business, in light of the right that section 1538.5(p) affords, is more akin to "judicial discretion," which we have long emphasized is subject to appropriate legal constraints. (See *Bailey v. Taaffe* (1866) 29 Cal. 422, 424 ["The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles"]; see also Black's 10th ed., at p. 565, col. 2 [defining "judicial discretion" as, inter alia, "[t]he exercise of judgment by a judge or court based on what is fair under the circumstances and guided by the rules and principles of law . . ."].)

### B. Discretion in Section 1538.5(p)

Where, as here, a specific statute affects the extent and nature of a trial court's discretion, we examine a trial court's actions in light of the specific law bearing on that discretion. (See *Sargon Enterprises, Inc. v. Univ. of Southern Cal.* (2012) 55 Cal.4th 747, 773 [" 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . ." ' "].) As part of that inquiry, we consider whether the trial court's exercise of discretion is consistent with the statute's intended purpose. (See *Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal.App.4th 359, 396 [trial court must "exercise its judicial discretion to accomplish the purposes of

10

the law granting such discretion"].)  This is true even though a trial court may have broad discretion under a statute.  (See *Williams v. City of Los Angeles* (1988) 47 Cal.3d 195, 204 [trial court abused its discretion by ordering police officer's reinstatement and excluding his statements from consideration at subsequent disciplinary hearings even though the court had "broad discretion" under Government Code section 3309.5 to fashion an "appropriate" remedy].)

Far from being mutually exclusive, then, discretion and statutory commands must often coexist.  So our analysis in this case implicates more than the aforementioned norm vesting trial courts with substantial managerial discretion, and the strong case for deference in matters implicating judicial administration.  We must also contend with the substantive content of section 1538.5(p), the statutory provision that was tailored by the Legislature to fit precisely the issue before us.

We interpret that section by starting, as we must in all problems of statutory interpretation, with its text.  (See, e.g., *People v. Cottle* (2006) 39 Cal.4th 246, 254.)  When interpreting the text of a specific provision, we consider the language of the entire legislative scheme and related statutes in ascertaining the Legislature's intended purpose.  (See *Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 632.)  In so doing, we ask whether our interpretation, as well as its resulting consequences, advances that purpose.  (See *People v. Zambia* (2011) 51 Cal.4th 965, 976-977.)  Where the statutory text admits of more than one reasonable interpretation, we may also consider various extrinsic aids — including the legislative history — to the extent they are helpful in advancing the Legislature's purpose.  (See *Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198.)

Any reasonable reading of section 1538.5 would recognize that the statute's purpose — as reflected in its text — includes taking account of the practical

constraints that would necessarily affect, and to some extent justify, trial court discretion. Such a reading would also recognize the importance that subdivision (p) appears to have in the broader structure of section 1538.5, which singles out for special treatment suppression motions arising in cases where charges are dismissed and refiled following a successful suppression motion. But the statute itself does not settle the precise scope of those constraints by providing a definition of the term "available." Nor does it describe what considerations should guide a court's determination of whether a judge is or is not available. So the term's ordinary meaning is instructive. (See *Cacho v. Boudreau* (2007) 40 Cal.4th 341, 349 ["In the absence of a statutory definition, we assume that the Legislature intended [the term in question] would have its ordinary meaning . . ."].) According to the Oxford English Dictionary, "available" means, inter alia, "capable of being made use of, at one's disposal, within one's reach." (1 Oxford English Dict. (2d ed. 1989) p. 812.) At the time section 1538.5(p) was enacted, Black's defined "available" as follows: "Suitable; useable; accessible; obtainable; present or ready for immediate use." (Black's Law Dict. (6th ed. 1990) p. 135, col. 1 (Black's 6th ed.).)

Rodriguez would take these definitions to mean that trial courts possess only a sliver of discretion in this context. A judge is unavailable for purposes of section 1538.5(p), contends Rodriguez, "if and only if that judge is no longer a judge of the court, due for example to death or retirement, or if the court finds, after active consideration of the circumstances surrounding that judge's calendar, that assigning that judge to hear the motion would occasion an intolerable delay in a jury trial or other time-sensitive proceeding." Under this view, a judge who has merely been assigned to a different courthouse or division within the county would still be available under the statute. The judge, Rodriguez might say, would still be "*capable* of being made use of." (1 Oxford English Dict., *supra*, at p. 812, italics

12

added.)  The People argue, on the other hand, that a judge is not available within the meaning of section 1538.5(p) if the judge is, as a matter of practical convenience, unable to take on the motion at the time the request is made.  In other words, the People might conclude, an available judge is one who is "present or ready for *immediate* use."  (Black's 6th ed., *supra*, at p. 135, col. 1, italics added.) The trial court has plenary authority to make that determination, according to the People.

But what must be true about a statutory term such as "available," at least under any plausible interpretive approach, is that in this context the term has some underlying content.  And that content is difficult to reconcile with a conclusion that the trial court's discretion in this arena is entirely unconstrained.  In other contexts, we have suggested that statutory terms related to a judge's availability indeed function as a constraint of sorts.  (See *Francis v. Superior Court in and for Los Angeles County* (1935) 3 Cal.2d 19, 27 (*Francis*) [finding a judge not "otherwise unavailable for the purpose of hearing [a new trial] motion" under Code of Civil Procedure section 661, which generally requires the same judge who presided at trial to hear such a motion, when "[the judge], on the day when the motion for a new trial was made before [another judge], was sitting in his department and was available for his usual duties"].)  The Legislature's inclusion of the word "available" in section 1538.5(p) not only qualifies the defendant's otherwise mandatory statutory right — that a subsequent suppression motion "*shall* be heard by the same judge" who granted the previous one (italics added) — but it also suggests a limitation on the institution that must honor that right.  To wit:  for a trial court to deny a defendant the opportunity to relitigate a suppression motion before the same judge who granted the previous one, the court must find that that judge is not available to hear the motion.  Only when such a finding has been made can the defendant's right be set aside.  It is within this context that the

trial court may lawfully exercise its discretion. Ignoring the import of said context would risk eliding the entire statutory scheme.

No such risk was at issue in *Anderson*. As explained above, we considered in that case whether a writ of mandate could lie to compel a presiding judge to assign judicial duties pursuant to Government Code section 69508. (*Anderson*, *supra*, 13 Cal.3d at pp. 735-737.) In finding the writ could lie, we nonetheless observed that the presiding judge's authority to " 'distribute the business of the court among the judges' " and to " 'prescribe the order of business' " under Government Code section 69508 was "wholly discretionary." (*Anderson*, at pp. 736-737 & fn. 2.) If such language appears to imply that trial courts possess even greater discretion to make assignments than what we here acknowledge, it is important to recognize that there was no equivalent in *Anderson* to section 1538.5(p) and its express command that subsequent suppression motions "shall be heard by the same judge" who granted the previous one. (Cf. *Anderson*, at p. 737 ["Government Code section 69508 does *not* require that a presiding judge assign specific matters or any 'business' of the court to a particular judge" (italics added)].)

To the extent the meaning of "available" in section 1538.5(p) remains unclear — even after taking account of the word's ordinary meaning, the cases in which we have found discretion to be constrained by statutory terms, and the fact that no other statutory provisions dilute its importance — an analysis of the legislative history further bolsters the case for interpreting the statute in a manner that gives some effect to that term. We previously described this history in *Jimenez*, *supra*, 28 Cal.4th at pages 805-808, and we do so again here. (See also *Barnes v. Superior Court* (2002) 96 Cal.App.4th 631, 638-641; *Soil*, *supra*, 55 Cal.App.4th at pp. 878-880.)

14

The sequence of events that led to the enactment of section 1538.5(p) appears to have begun with our decision in *Schlick v. Superior Court* (1992) 4 Cal.4th 310. There, we interpreted section 1538.5(d) as precluding the People from relitigating a suppression motion that the superior court had granted in a felony matter. (*Schlick*, at p. 316.) Although the People were free to dismiss the case and refile new charges, they could not relitigate the suppression motion post-*Schlick*. Instead, the initial court's ruling would bind any subsequent prosecution. (*Jimenez*, *supra*, 28 Cal.4th at p. 805.)

In response to *Schlick*, the Legislature amended section 1538.5 in 1993 by revising subdivision (j) and adding subdivision (p). (Stats. 1993, ch. 761, § 2, pp. 4251-4252.) Section 1538.5(j) now provides that if a suppression motion is granted either at the preliminary hearing or in the superior court, resulting in dismissal of the action, the prosecution may refile the action, and the previous suppression ruling "shall not be binding in any subsequent proceeding, except as limited by subdivision (p)." At the same time, the Legislature added subdivision (p), which, as relevant here, provides: "Relitigation of the motion shall be heard by the same judge who granted the motion at the first hearing if the judge is available."

It was the Los Angeles County District Attorney (the District Attorney) that lobbied for Senate Bill No. 933 (1993-1994 Reg. Sess.), which resulted in the 1993 amendments to section 1538.5. In support of the bill, the District Attorney told the Legislature that because prosecutors were overburdened with crushing caseloads and suppression motions were often dispositive in criminal matters, defendants would (unfairly) get off simply because an overworked prosecutor did a poor job of presenting the evidence at the initial hearing. Prosecutors, argued the District Attorney, should therefore get the benefit of a second chance to present evidence and respond to the concerns reflected in a suppression motion. (See

15

Assem. Com. on Public Safety, Analysis of Sen. Bill No. 933 (1993-1994 Reg. Sess.) as amended May 20, 1993, pp. 2-3 [" '[S]uperior court calendars are crowded. Deputy district attorneys must juggle many cases each day. . . . [¶] . . . [¶] . . . Often, the [motion to suppress evidence] is dispositive of a case. If it is granted, the case must be dismissed. If it is denied, the defendant will plead guilty or in all likelihood be found guilty if brought to trial. The [District Attorney] believes that 'it is unfair to the prosecution . . . for a criminal defendant whose culpability for a serious felony may be beyond question to "beat the rap" simply because an overworked prosecutor at one pretrial hearing was unable to present the People's evidence in the most effective manner. The ability to refile and relitigate the suppression motion . . . will largely overcome this without compr[om]ising any constitutional right of the defendant . . .' "].)

The result was Senate Bill No. 933 (1993-1994 Reg. Sess.). But when introduced, the bill had no provision governing which judge should hear relitigated suppression motions. (*Jimenez*, *supra*, 28 Cal.4th at p. 807.) It was this omission that appears to have prompted the California Attorneys for Criminal Justice (CACJ) to oppose the original bill, which, in CACJ's view, "would allow prosecutors to 'take another shot' with another judge after losing a suppression motion in superior court" and, thus, "would encourage forum shopping." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 933 (1993-1994 Reg. Sess.) May 11, 1993, p. 4.) In response to CACJ's concerns, the bill was amended to include a statement of the Legislature's intended purpose: "It is the intent of the Legislature, in amending Section 1538.5 of the Penal Code, that this act shall not be construed or used by a party as a means to forum shop." (Sen. Bill No. 933 (1993-1994 Reg. Sess.) as amended May 20, 1993.)

The bill was soon amended yet again. Included in the amended version was language modifying proposed subdivision (p) to direct that the judge who granted

16

the earlier suppression motion shall hear the relitigated motion if that judge is available. (Sen. Bill No. 933 (1993-1994 Reg. Sess.) as amended Aug. 16, 1993.) With that language added, the bill passed both houses and was prepared for executive signature. In his cover letter to the Governor, the bill's sponsor explained that "[Senate Bill No. 933] prohibits 'forum shopping' by requiring that all search and seizure motions in a case be heard by the same judge, if that judge is available." (Sen. Kopp, sponsor of Sen. Bill No. 933 (1993-1994 Reg. Sess.), letter to Governor Wilson, Sept. 7, 1993.)[4]

This legislative history makes even clearer what can be inferred from a close analysis of the statute's text and structure: that the Legislature's purpose in enacting section 1538.5(p)'s same judge rule was to prohibit prosecutors from engaging in forum shopping — or, more specifically, judge shopping. (See *Jimenez*, *supra*, 28 Cal.4th at p. 807.) As we explained in *Jimenez*, attempts by the People " 'to direct a case *away* from a particular court . . . can only be described as the very forum shopping the Legislature recognized as a problem and attempted to remedy by inserting a prohibition against the evil within [Penal Code] section 1538.5, subdivision (p).' " (*Id.* at p. 808.)

The same judge rule also serves a related institutional purpose: It ensures that prosecutors will have to make their renewed case before a judge already familiar with the relevant facts and, more importantly, the bases for the original grant. That judge is in the best position to weigh whatever new evidence or arguments the People have brought to bear and test those against his or her reasons

---

**4** Although we may only draw limited inferences from an individual legislator's letter, we have considered letters expressing the views of a bill's sponsor to the Governor, where those views are fully consistent with the statutory language and purpose. (See *Larkin v. WCAB* (2015) 62 Cal.4th 152, 164 & fn. 10; *Harrott v. County of Kings* (2001) 25 Cal.4th 1138, 1162 & fn. 4.)

17

for granting the previous motion to suppress. (Cf. *Francis*, *supra*, 3 Cal.2d at p. 29 ["To have the motion for a new trial heard by a judge familiar with the facts and law of the case, rather than by one totally unfamiliar with such facts and who has made no special study of the law applicable to those facts, was the very essence of section 661 of the Code of Civil Procedure"].) This arrangement, the Legislature determined, would best protect a defendant's constitutional right to be free from unreasonable searches and seizures, while still allowing overworked prosecutors a second chance to oppose suppression. This legislative balancing underscores once more how this case, unlike *Anderson*, requires us to devise a rule grounded in a statutory scheme intended to account for a multitude of important interests.

### C. Reasonable, Good Faith Measures

In light of these purposes and how they were embodied in the statute, we generally agree with Rodriguez's interpretation. Although trial courts have discretion to determine whether a judge is available within the meaning of section 1538.5(p), that discretion must be meaningfully cabined to protect the statutory right of every defendant, if possible, to have the same judge decide any relitigated suppression motion. To that end, we find that mere inconvenience is not sufficient to render a judge unavailable for purposes of section 1538.5(p). (Cf. *People v. Arbuckle* (1978) 22 Cal.3d 749, 757, fn. 5 (*Arbuckle*) [explaining that "a defendant's reasonable expectation of having his sentence imposed, pursuant to bargain and guilty plea, by the judge who took his plea and ordered sentence reports should not be thwarted for mere administrative convenience"].)

This is not to say that reviewing courts are now free to second-guess judgment calls that are better left to the trial courts. Trial courts have considerable discretion to administer their logistical affairs, and rightly so: lodged in trial

18

courts is likely the contextual knowledge and motivation to deploy judicial resources effectively, and to learn over time. But to adequately protect a defendant's statutory right under section 1538.5(p), we hold that a trial court must take reasonable steps in good faith to ensure that the same judge who granted the previous suppression motion is assigned to hear the relitigated motion. Only if the trial court has done so may it make a finding of unavailability. And the trial court must make such a finding on the record, so appellate review proves meaningful. (See *People v. Lewis* (2006) 39 Cal.4th 970, 1063-1064; cf. *Still v. Pearson* (1950) 96 Cal.App.2d 315, 318 ["when a judge other than the one who presided at the trial proceeds to hear the motion for a new trial, it is the best practice, in the interests of certainty and convenience, to cause a record to be made reciting the fact of the inability or absence of the judge who presided at the trial"].) Such a finding, unsupported by record evidence demonstrating the reasonable measures a trial court has taken to honor a defendant's section 1538.5(p) right, is an abuse of discretion.

This standard strikes an appropriate balance: it reflects the importance of the statute's provisions and purpose, while taking account of the sensible reasons for preserving trial courts' discretion. (Cf. *Francis*, *supra*, 3 Cal.2d at p. 28 [holding that, for purposes of Code of Civil Procedure section 661, a "motion for the new trial shall be heard and determined *whenever practicable* by the judge who had heard the evidence at the trial of the case, and who was therefore best prepared and qualified to pass upon the merits of the motion" (italics added)].) In exercising that discretion, trial courts may consider a variety of factors bearing on a particular judge's availability, including the court's resources, the interests of the parties, and the interests of litigants in other cases. But the trial court must do so in a manner that is consistent with section 1538.5(p)'s requirement that, if at all practicable, the same judge who granted the defendant's previous suppression

motion shall hear the relitigated one. And the trial court must take reasonable, good faith measures to comply with that requirement.

This standard is also in line with our previous holdings. In *Arbuckle*, the defendant pleaded guilty to assault with a deadly weapon pursuant to a plea bargain. (*Arbuckle*, *supra*, 22 Cal.3d at p. 752.) But the judge who had accepted the defendant's plea was transferred to another department of the superior court, so the defendant was sentenced to prison, over his objection, by another judge of that court. (*Id.* at p. 753.) We reversed, stating generally that "whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge." (*Id.* at pp. 756-757.) We explained that a defendant's reasonable expectation of having his sentence imposed by the same judge who took his plea should not yield "for mere administrative convenience." (*Id.* at p. 757, fn. 5.) If, however, the original judge is truly "not available" for sentencing purposes — say, because it would be impracticable for the judge to hand down the sentence — we said the defendant must be afforded the option of proceeding before another available judge or of withdrawing his plea. (*Ibid.*)

Here, as in *Arbuckle*, a showing of more than mere inconvenience is necessary before a judge can be deemed unavailable. In fact, section 1538.5(p) cases command at least as great a showing of impracticability. This is so because, unlike the defendant in *Arbuckle*, Rodriguez has no alternative remedy at his disposal. Nothing quite compares, in this case, to allowing a defendant's withdrawal of his or her guilty plea. If the same judge does not hear Rodriguez's relitigated suppression motion, it will be heard by another, just as the People intended below.

Permitting a different judge to hear the suppression motion despite the text of section 1538.5(p) — and without a demonstrated showing of reasonable, good

20

faith measures taken — would risk rendering the statute's same judge rule a dead letter. In *Jimenez*, we considered whether the People could make a judge unavailable to hear a relitigated suppression motion by disqualifying that judge pursuant to Code of Civil Procedure section 170.6, which allows a party to peremptorily challenge a judge on the basis of prejudice. (*Jimenez*, *supra*, 28 Cal.4th at p. 801.) After recounting section 1538.5(p)'s legislative history, much as we did above, we concluded that the Legislature's intended purpose in enacting section 1538.5(p) was " 'to prohibit prosecutors from forum shopping." (*Jimenez*, at p. 807.) We concluded further that allowing the People to render a judge unavailable simply by filing a peremptory challenge "would permit this prohibited forum shopping and 'essentially eviscerate[] the provisions of subdivision (p)' of Penal Code section 1538.5." (*Ibid.*)

The same is true here. Although it was the trial court in this case, not the People, that concluded Judge Chiarello was unavailable by virtue of his assignment to the Palo Alto courthouse, the People repeatedly opposed Rodriguez's requests for Judge Chiarello to hear his subsequent motion to suppress. Such opposition suggests the People may have preferred that someone other than Judge Chiarello decide the relitigated suppression motion; the presiding judge's ruling enabled that preference. Allowing modest administrative inconvenience to trump concerns about forum shopping would frustrate the statutory purpose plainly evident in the text and legislative history of section 1538.5(p). (See *Jimenez*, *supra*, 28 Cal.4th at p. 808.)

The Court of Appeal's decision in *People v. Roberts* (2010) 184 Cal.App.4th 1149 (*Roberts*) addresses a different issue. Section 629.60 requires that once a judge has issued an order authorizing a wiretap, periodic reports about the wiretap "shall" be submitted "to the judge who issued the order." In *Roberts*, one judge had authorized a wiretap on the defendant's cell phone, but some of the

21

reports required by section 629.60 were submitted to a different judge for review, in violation of the statute. (*Roberts*, at p. 1183.) The Court of Appeal found that this error did not warrant reversal, however, because "we do not believe the requirement the report be signed only by the judge that issued the authorization order plays a central role in the statutory scheme." (*Id.* at p. 1185.)

Here, by contrast, section 1538.5(p)'s requirement that a subsequent suppression motion be heard by the same judge who granted the previous motion plays a critical role in the statutory scheme. That is the very statutory scheme that abrogated *Schlick* by allowing prosecutors to dismiss a case, refile it, and then relitigate anew any subsequently filed motion to suppress. The same judge rule was adopted precisely because of concerns that this new scheme would also permit prosecutors to forum shop. To guard against that ill, the Legislature inserted the same judge requirement in section 1538.5(p). (*Jimenez*, *supra*, 28 Cal.4th at pp. 807-808.) Unlike in this case, moreover, the main purpose of the wiretap statute at issue in *Roberts* — to "limit[] unnecessary interception of wire and oral communications" (*Roberts*, *supra*, 184 Cal.App.4th at p. 1185) — can still be served even when a different judge reviews the required reports. We therefore agree with the Court of Appeal below that *Roberts* is inapposite.

## D. Abuse of Discretion

Applying our rule to the facts here, we conclude that the trial court abused its discretion.

The ineluctable realities of life sometimes mean that the judge designated by statute to hear a suppression motion has died, retired, resigned, or lacks the capacity to undertake his or her duty. This is not such a case. (Cf. *Telefilm, Inc. v. Superior Court in and for Los Angeles County* (1949) 33 Cal.2d 289, 292 [explaining that "a variety of contingencies" can render a judge unable to hear a

22

new trial motion under Code of Civil Procedure section 661, including "death or the happening of an equally significant event in life affecting his continued performance of his judicial duties, such as expiration of his term of office, resignation or retirement from service, disqualification, as well as some physical or mental disorder"].) Indeed, Judge Chiarello ultimately presided over Rodriguez's bench trial.

What happened instead is Rodriguez properly requested that Judge Chiarello be assigned to hear the relitigated suppression motion, and Judge Nadler, the presiding judge, denied the request without taking reasonable steps to comply with section 1538.5(p). In October 2011, Judge Nadler indicated that he did not agree the motion needed to be heard by Judge Chiarello, and that, in any event, Judge Chiarello was unavailable because he had been transferred to another division up the road in Palo Alto. The record does not show Judge Nadler ever attempted to contact Judge Chiarello, or that he inquired as to when Judge Chiarello might be available to hear Rodriguez's motion. This failure to take reasonable measures to honor Rodriguez's statutory right was an abuse of discretion.

Rodriguez contends that this error was prejudicial because the same facts were presented in the second case as were presented to Judge Chiarello in the first case, and "[t]here is no reason to suppose that Judge Chiarello would have analyzed them any differently the second time he heard the suppression motion than he did the first time." The People do not dispute that the same facts were presented in each case. What they assert instead is that the second judge "reasonably denied the defense motion to suppress evidence," citing only the conclusion of the Court of Appeal that substantial evidence supported the second judge's finding of voluntary consent to the search.

23

But the fact that substantial evidence could conceivably support the second judge's conclusion that consent was lawfully obtained does not imply that Judge Chiarello would have altered his interpretation of the circumstances in which the officers entered the home and took Rodriguez's computer. Nor does it establish that Judge Chiarello's ruling, based on his interpretation of the evidence, was erroneous. Indeed, the justification underlying section 1538.5(p) is the value of consistency in this very context: the same judge who granted the previous suppression motion must hear the relitigated motion because it is that judge who is best suited to weigh whatever new evidence or arguments the prosecution has brought to bear and test those against his or her reasons for granting the prior motion. We risk undermining precisely the statutory scheme we are charged with interpreting by trying to reconstruct, in the abstract, what Judge Chiarello might have done if presented with the same evidence and arguments the prosecution offered to the second judge.

For these reasons, we agree with Rodriguez that it is reasonably probable he would have achieved a more favorable ruling had Judge Chiarello heard the relitigated suppression motion. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.) And because the prosecution of Rodriguez depended on the images and video footage seized from his desktop computer, along with the incriminating statements he made to police during the execution of the subsequent search warrant, it is reasonably probable a result more favorable to Rodriguez would have obtained absent the trial court's abuse of discretion. (See *ibid.*) So the lower court's error, we conclude, was prejudicial.[5]

---

[5] If a defendant immediately seeks review by writ of a trial court's decision not to send a relitigated suppression motion to the judge who granted the previous one, the only issue will be whether the record establishes that the trial court took

*(footnote continued on next page)*

So we reverse the judgment of the Court of Appeal. We remand the case with directions that the Court of Appeal instruct the trial court to determine, on the record, whether Judge Chiarello is now available to hear Rodriguez's relitigated suppression motion. And if Judge Chiarello is available, section 1538.5(p) requires that he hear the motion.

_(footnote continued from previous page)_

reasonable steps in good faith to ensure the same judge heard the relitigated motion. The defendant will not be required to establish a reasonable probability that the original judge would grant the suppression motion a second time. Prompt resolution of the issue by writ review may prevent the waste of resources on a trial that results in a judgment that must be reversed, as occurred in this case.

### III. CONCLUSION

The same judge requirement in section 1538.5(p) does not eliminate an important measure of discretion vested in the trial court and its presiding judge to handle matters of judicial availability. Yet because judicial discretion and statutory commands routinely coexist, trial courts must use that discretion to determine whether a judge is available within the meaning of section 1538.5(p) only in accordance with the constraints imposed by the statute's text and purpose. Before a trial court (or its presiding judge) can declare a judge unavailable, it must take reasonable, good faith measures to ensure that the same judge who granted the previous suppression motion is assigned to hear the relitigated motion. Any finding of unavailability must also be made on the record. The trial court's failure to meet that standard constituted prejudicial error.

We reverse the judgment of the Court of Appeal and remand the case with directions that the Court of Appeal instruct the trial court to determine on the record, consistent with our analysis here, whether Judge Chiarello is now available to hear Rodriguez's relitigated suppression motion.

**CUÉLLAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**
**KRUGER, J.**

26

**CONCURRING OPINION BY CORRIGAN, J.**

I concur in the judgment and join in the court's conclusion that a presiding judge must take reasonable steps in good faith to ensure that the same judge who granted an earlier suppression motion is assigned to hear the relitigated suppression motion. (Maj. opn., *ante*, at p. 19.) However, I disagree with two aspects of the majority's analysis.

The majority states that cases involving the "same judge" rule of Penal Code section 1538.5, subdivision (p) (section 1538.5(p)), "command at least as great a showing of impracticability" as was required in *People v. Arbuckle* (1978) 22 Cal.3d 749. (Maj. opn., *ante*, at p. 20.) *Arbuckle* is analytically different. We did not find, there, that a presiding judge had discretion to assign a defendant's sentencing hearing to a different judge from the one who accepted his plea agreement. Nor did we establish a threshold level of impracticability that would justify such an assignment. *Arbuckle* was based on a contract enforcement analysis. The defendant agreed to plead guilty upon the implied assurance he would be sentenced by a certain judge. If circumstances arose which prevented the honoring of that condition, the contract was breached. The *remedy* thus available was to permit the defendant to withdraw his plea and return the parties to the status quo ante.

To be sure, we can conclude that a judge's transfer to another division of a superior court should not thwart a defendant's statutory right to have the same

judge hear his relitigated suppression motion. However, the suggestion that an equal or greater degree of impracticability must be shown in these cases than in *Arbuckle* is perplexing, because we did not find in *Arbuckle* that *any* degree of impracticability would excuse a presiding judge's assignment of a sentencing hearing to a different judge.

The majority also compares the district attorney's action here to that of the prosecution in *People v. Superior Court (Jimenez)* (2002) 28 Cal.4th 798. There, the prosecution attempted to render a judge unavailable to hear the defendant's relitigated suppression motion by disqualifying that judge under Code of Civil Procedure section 170.6. (*Jimenez*, at p. 802.) If permitted, the prosecution's actions would have divested the presiding judge of the discretion to determine the relevant judge's availability. Here, the prosecution argued that section 1538.5(p) did not compel the presiding judge to assign defendant's relitigated suppression motion to Judge Chiarello for a variety of reasons. But the discretion to determine Judge Chiarello's availability remained at all times with the presiding judge. The two situations are quite different. Although the standard the court announces today certainly would honor the same judge rule, the prosecution's actions here were not comparable to those in *Jimenez.*

With those reservations, I join the majority.

CORRIGAN, J.

2

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Rodriguez

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 231 Cal.App.4th 288
**Rehearing Granted**

_____

**Opinion No.** S223129
**Date Filed:** August 22, 2016

_____

**Court:** Superior
**County:** Santa Clara
**Judge:** Vincent J. Chiarello

_____

**Counsel:**

Jonathan E. Berger, under appointment by the Supreme Court, and Victoria Hobel Schultz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Gerald A. Engler, Chief Assistant Attorneys General, Jeffrey M. Laurence, Acting Assistant Attorney General, Laurence K. Sullivan, Seth K. Schalit and René A. Chacón, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jonathan E. Berger
1415 Fulton Road, #205-170
Santa Rosa, CA  95403
(707) 206-6649

René A. Chacón
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-5957