Filed 1/7/22  P. v. Valenzuela CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B309402 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA226098) |
| v. | |
| SANTOS VALENZUELA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry A. Bork, Judge.  Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and David W. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

In 2004, Santos Valenzuela was convicted of two counts of attempted premeditated murder (Pen. Code,[1] §§ 187, subd. (a), 664, subd. (a)).  In August 2019, Valenzuela filed a petition for resentencing pursuant to section 1170.95.  The superior court denied the petition on the ground that Valenzuela was ineligible for relief as a matter of law because attempted murder was not a qualifying offense under the statute.  On appeal, Valenzuela argues the denial of the petition was improper because it was not issued by the judge who originally sentenced him.  Valenzuela also asserts the superior court erred in finding that section 1170.95 does not apply to a conviction for attempted murder.

During the pendency of Valenzuela's appeal, the Governor approved Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775).  The new legislation, which took effect on January 1, 2022, amends section 1170.95 to allow certain persons convicted of attempted murder to seek relief under the statute.  (Stats. 2021, ch. 551, § 2.)  Because Valenzuela may be eligible for relief under Senate Bill 775, we reverse the order denying his petition and remand the matter to the superior court to conduct further proceedings on the petition.

We adopt the factual and procedural background in part from this court's prior opinion in *People v. Valenzuela* (Nov. 10, 2005, B175087) [nonpub. opn.].[2]

---

[1] Unless otherwise stated, all further statutory references are to the Penal Code.

[2] Footnotes that have been retained are sequentially renumbered.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.    Valenzuela's 2004 trial for attempted murder.

### A.    *The shooting.*

During the early morning on November 18, 2001, Felix Carillo was a passenger in a car his friend Francisco Rascon was driving. While stopped at a red light at the intersection of Indiana and Whittier, Carillo saw a white Chevy Blazer traveling east to west on Whittier. The Blazer made a U-turn and stopped on Indiana facing in the opposite direction as Carillo and Rascon.[3] There were two people in the car, the driver and a passenger. Carillo saw the driver's face, but not the passenger's.[4]

The passenger, who was holding a gun, got out of the car. Carillo told Rascon to drive away. Shots were fired, and the rear and front passenger windows were shattered. Carillo was shot in the back of his head. Rascon drove Carillo to a hospital where he was treated for his injury.

The day after the shooting, defendant asked Emilia Yang del Chavez if she wanted to buy his white Chevy Blazer, and she agreed to buy it for $100.

---

[3] Carillo gave different versions of how the shooter's car was positioned. In one version it was facing northbound, and in the other it was facing southbound.

[4] Carillo testified at trial the driver's side window was down, but at the preliminary hearing he testified it was up. He also testified the driver was wearing a beanie, but he had previously told officers the shooter was wearing a beanie.

B. *The investigation.*

Detective Robert Gray was assigned to investigate the case. After reading the police report about the shooting, Detective Gray recalled a recent field interview he had conducted on October 22, 2001 of an individual, defendant, who was driving a car matching the description of the car involved in the shooting. During that field interview, defendant admitted he was a member of Little Valley, an East Los Angeles gang, and his moniker was "Trigger." Defendant also had Little Valley tattoos. Deputy Eduardo Aguirre conducted a similar field interview with defendant on October 27, 2001. Defendant was driving a white Chevy Blazer, and he admitted to being a member of the Little Valley gang.

Detective Gray then prepared a six pack that included a photograph of defendant. He showed the six pack to Carillo on November 21, 2001, and Carillo identified defendant as the driver.[5] Carillo testified Detective Gray did not tell him who he should pick.

C. *The defense.*

Defendant's wife testified he was with her at the time of the shooting. Richard Lopez testified defendant is not a current gang member.

[We end our quotation from the opinion in *People v. Valenzuela, supra,* B175087.]

D. *The verdict and sentence.*

The jury found Valenzuela guilty of two counts of attempted murder (§§ 187, subd. (a), 664), and found true

---

[5] He also identified defendant at the preliminary hearing and at trial.

the allegations that the offenses were committed willfully, deliberately, and with premeditation (§ 664, subd. (a)). The jury also found true the firearm enhancement (§ 12022.53, subds. (b), (c), (e)(1)) and gang enhancement (§ 186.22, subd. (b)(1)) allegations on each count. The trial court sentenced Valenzuela to a total term of 73 years to life in state prison.

## II. Valenzuela's 2019 petition for resentencing.

On August 9, 2019, Valenzuela, representing himself, filed a petition for resentencing under section 1170.95. On the printed form petition, Valenzuela did not check any of the boxes indicating that he had been charged with, or convicted of, murder under a felony murder theory or the natural or probable consequences doctrine. He did, however, check the boxes indicating that he was not the actual killer; he did not, with the intent to kill, aid or abet the actual killer in the commission of a murder; and he was not a major participant in the felony and did not act with reckless indifference to human life. Valenzuela also requested the appointment of counsel during the resentencing process.

On November 6, 2020, the superior court held a hearing on the section 1170.95 petition. Valenzuela waived his appearance at the hearing due to health and safety concerns regarding COVID-19. However, he was represented at the hearing by his trial counsel. After hearing from both People and defense counsel, the superior court denied the petition. The court found that Valenzuela was ineligible for relief as a matter of law because section 1170.95 did not apply to a conviction for attempted murder.

Valenzuela timely appealed.

# DISCUSSION

## I.     Overview of section 1170.95.

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) amended murder liability under the felony murder rule and natural and probable consequences doctrine.  (*People v. Lewis* (2021) 11 Cal.5th 952, 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)  It amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration or attempted perpetration of qualifying felonies is liable for felony murder only if the person:  (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor in the murder; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d).  (See *Gentile*, at p. 842.)  It amended the natural and probable consequences doctrine by adding section 188, subdivision (a)(3), which states that malice shall not be imputed to a person based solely on his or her participation in a crime.  (*Id.* at p. 843.)

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a now-invalid felony murder or natural and probable consequences theory may petition the superior court to vacate the murder conviction and resentence the petitioner on any remaining counts.  (*People v. Lewis, supra,* 11 Cal.5th at p. 959; *People v. Gentile, supra,* 10 Cal.5th at p. 843.)  A petitioner is eligible for relief if he or she:  (1) was charged with murder by means of a charging document that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) was convicted of first or

second degree murder; and (3) could no longer be convicted of first or second degree murder due to the changes to sections 188 and 189 effectuated by Senate Bill 1437.  (§ 1170.95, subd. (a).)

If the petition contains all the required information, including a declaration by the petitioner that he was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c) requires the superior court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that he is entitled to relief.  (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 959–960.)  In determining whether the petitioner has made the requisite prima facie showing that he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971.)

If a petitioner makes a prima facie showing of entitlement to relief, the superior court must issue an order to show cause (§ 1170.95, subd. (c)), and hold a hearing to determine whether to vacate the murder conviction and resentence the petitioner (§ 1170.95, subd. (d)(1)).  At that hearing, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for relief.  (§ 1170.95, subd. (d)(3).)  Both the prosecution and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.  (§ 1170.95, subd. (d)(3).)  If the prosecution fails to sustain its burden of proof, the court must vacate the murder conviction and any allegations and enhancements

7

attached to it, and resentence the petitioner on the remaining counts. (§ 1170.95, subd. (d)(3).)

## II.  Availability of sentencing judge to rule on Valenzuela's section 1170.95 petition

Section 1170.95, subdivision (b)(1) provides, in relevant part, that the "petition shall be filed with the court that sentenced the petitioner . . . . If the judge that originally sentenced the petitioner is not available to resentence the petitioner, the presiding judge shall designate another judge to rule on the petition." On appeal, Valenzuela argues the order denying his section 1170.95 petition must be reversed because it was not issued by the judge who originally sentenced him, and there was no showing that the sentencing judge was unavailable.

### A.  *Relevant background.*

Los Angeles Superior Court Judge Marsha N. Revel presided over Valenzuela's 2004 trial and sentencing. As of November 6, 2020, the date of the hearing on Valenzuela's section 1170.95 petition, Judge Revel was no longer assigned to the superior court's criminal division. As a result, the superior court designated Judge Terry A. Bork to rule on the petition.[6]

---

[6] The record reflects that the matter had been assigned to Judge Bork as of September 23, 2019, when Judge Bork granted the People's request for an extension of time to respond to the petition. On December 16, 2019, Judge Bork set the matter for a hearing, and notified the People and Valenzuela's counsel of the hearing date. Judge Bork thereafter continued the hearing several times due to COVID-19 protocols and a stipulation of both parties.

8

At the start of the November 6, 2020 hearing, Judge Bork addressed on the record why the matter had not been assigned to Judge Revel.  Judge Bork explained:  "Since we were here last, the Court of Appeal issued the *Santos*[7] case that said that the sentencing judge should be the one that handles these 1170.95 hearings.  And[ ] now, the sentencing judge in this case, Judge Marsha Revel, does still sit on the Los Angeles Superior Court, but under the rules . . . set by the supervising judge of the criminal division, if the judge is no longer assigned to the criminal division, then that judge is deemed unavailable for purposes of 1170.95 in the *Santos* case.  And that's a written motion provided to us by Supervising Judge Sam Ohta last week.  [¶]  And so I made inquiry and found that Judge Revel is currently assigned in the Beverly Hills courthouse doing traffic cases, which is technically speaking, not a part of the criminal d[iv]ision, and equally as concerning, she does not have a lockup and does not have a court reporter.  [¶]  So accordingly, I was told yesterday by Assistant Supervising Judge Tapia who is, as of next month, will be the supervising judge that . . . notwithstanding the *Santos* case, that I am to keep this matter for all issues related to 1170.95." [8]

Addressing Valenzuela's counsel, Judge Bork then stated, "So counsel, if you want to make any record on that point, of

---

[7] *People v. Santos* (2020) 53 Cal.App.5th 467.

[8] In *People v. Santos*, *supra*, 53 Cal.App.5th at page 474, the Court of Appeal held that the phrase " 'the judge that originally sentenced the petitioner,' " as used in section 1170.95, subdivision (b)(1), refers to the individual public official, rather than the tribunal.

course you're welcome, but I did want to make the record so that any reviewing court would know why it's here with me when I was not the sentencing judge." Valenzuela's counsel replied, "I do not, Your Honor no." At the conclusion of the hearing, Judge Bork denied Valenzuela's petition.

> B. *The superior court did not abuse its discretion in finding that Judge Revel was unavailable to rule on Valenzuela's petition.*

Valenzuela contends the superior court erred in assigning Judge Bork to rule on his section 1170.95 petition because the record does not establish that Judge Revel was unavailable. As the People correctly assert, however, Valenzuela forfeited this claim of error by failing to make a timely objection in the superior court. At the hearing on the petition, Judge Bork set forth the reasons why Judge Revel was unavailable to hear the petition, and then offered Valenzuela's counsel an opportunity to respond. His counsel expressly declined to do so. By failing to raise any objection to the superior court's finding regarding Judge Revel's unavailability, Valenzuela forfeited his right to challenge such finding on appeal. (See *People v. Anderson* (2020) 9 Cal.5th 946, 961 [defendant who fails to object to purportedly erroneous ruling generally forfeits right to challenge ruling on appeal].) Even if not forfeited, however, Valenzuela's claim lacks merit.

In *People v. Rodriguez* (2016) 1 Cal.5th 676, 679, the California Supreme Court considered the scope of the trial court's discretion to determine whether a judge was "available" within the meaning of section 1538.5. That statute provides, in pertinent part, that a subsequent motion to suppress evidence must be heard by the same judge who granted the prior motion "if the judge is available." (§ 1538.5, subd. (p).) The court

10

concluded that "a judge may be found unavailable for purposes of section 1538.5[, subd. ](p) only if the trial court, acting in good faith and taking reasonable steps, cannot arrange for that judge to hear the motion." (*Rodriguez*, at p. 679.)  Recognizing that trial courts exercise broad discretion in determining whether a judge is available, the court explained:  "This is not to say that reviewing courts are now free to second-guess judgment calls that are better left to the trial courts.  Trial courts have considerable discretion to administer their logistical affairs, and rightly so: lodged in trial courts is likely the contextual knowledge and motivation to deploy judicial resources effectively, and to learn over time.  But to adequately protect a defendant's statutory right under section 1538.5[, subd. ](p), we hold that a trial court must take reasonable steps in good faith to ensure that the same judge who granted the previous suppression motion is assigned to hear the relitigated motion.  Only if the trial court has done so may it make a finding of unavailability.  And the trial court must make such a finding on the record, so appellate review proves meaningful." (*Rodriguez*, at p. 691.)

In this case, the record demonstrates that the superior court took reasonable, good faith measures prior to determining that Judge Revel was unavailable to rule on Valenzuela's section 1170.95 petition.  As Judge Bork explained, as of the hearing on the petition, Judge Revel was no longer assigned to the superior court's criminal division and instead was assigned to the traffic division.  Upon inquiring about Judge Revel's availability, Judge Bork also was informed that, because Judge Revel was currently presiding over traffic cases at a courthouse in Beverly Hills that did not handle criminal matters, she could not provide a lockup facility for Valenzuela or a court reporter for the hearing on his

11

petition. Judge Bork set forth the basis for the superior court's finding of unavailability on the record and provided Valenzuela's counsel with an opportunity to respond to such ruling.

In challenging the superior court's finding of unavailability on appeal, Valenzuela argues that the lack of a lockup facility was a "non-issue" in this case because he waived his personal appearance at the November 6, 2020 hearing. As the People point out, however, Valenzuela could have withdrawn his waiver at any time in the proceedings, and may have elected to do so if the court had issued an order to show cause and set the matter for an evidentiary hearing. Valenzuela also suggests that "surely a court reporter could have been assigned without causing a degree of inconvenience that would render Judge Revel unavailable." While Valenzuela is correct that mere inconvenience is not sufficient to render a judge unavailable, it is not the role of this court to second-guess the judgment of the trial court with respect to the proper management and allocation of its resources. (*People v. Rodriguez, supra*, 1 Cal.5th at pp. 690–691; see Gov. Code, § 69508, subd. (a) [vesting presiding judges with the authority to "distribute the business of the court among the judges"]; Cal. Rules of Court, rule 10.603(b)(1)(A) & (B) [authorizing presiding judges to "[a]ssign judges to departments" and "[a]pportion the business of the court, including assigning and reassigning cases to departments"].) As the Supreme Court observed in *Rodriguez*, at page 684, "[g]iven the existence of different trial courts with different needs—in some counties, involving dozens of judges and multiple locations—we have emphasized the need for courts to have particularly broad discretion in the exercise of such managerial functions."

Here, the superior court, acting in good faith and taking reasonable measures, found that Judge Revel was unavailable to rule on Valenzuela's section 1170.95 petition because she was no longer assigned to the criminal division, and in her current assignment, she did not have the resources necessary to conduct a hearing on the petition. On this record, the superior court's finding of unavailability was not an abuse of discretion.

### III. Valenzuela's eligibility for relief under the new amendments to section 1170.95.

Valenzuela also challenges the superior court's ruling that he was ineligible for relief as a matter of law under section 1170.95. He specifically contends the superior court erred in finding that, under the version of section 1170.95 currently in effect, eligibility for relief does not extend to defendants convicted of attempted murder. Valenzuela further asserts that, in light of the amendments to section 1170.95 that took effect on January 1, 2022, the matter should be remanded to the superior court to reconsider his petition under the amended statute.

Prior to Senate Bill 775, appellate courts uniformly held that the resentencing relief afforded by section 1170.95 only applies to convictions for murder, not attempted murder. (See, e.g., *People v. Love* (2020) 55 Cal.App.5th 273, 279, review granted Dec. 16, 2020, S265445; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1018, review granted Mar. 11, 2020, S259948; *People v. Larios* (2019) 42 Cal.App.5th 956, 970, review granted Feb. 26, 2020, S259983; *People v. Munoz* (2019) 39 Cal.App.5th 738, 743, review granted Nov. 26, 2019, S258234.) However, Senate Bill 775 amends section 1170.95, subdivision (a) to provide, in relevant part, that a "person convicted of felony murder or murder under the natural and probable consequences

13

doctrine . . . , attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts." (Stats. 2021, ch. 551, § 2.) Senate Bill 775 accordingly expands eligibility for relief under the statute to include persons convicted of attempted murder under the natural and probable consequences doctrine.[9]

Based on the limited record before us, we cannot determine whether the People proceeded under a natural and probable consequences theory in prosecuting Valenzuela for attempted murder. While the record on appeal reflects that Valenzuela was convicted of two counts of attempted premeditated murder based on his role as the driver in a gang-related shooting, it does not reveal if the jury was instructed on direct aiding and abetting principles, the natural and probable consequences doctrine, or both theories of attempted murder liability. If, however, Valenzuela was convicted of attempted murder based on the natural and probable consequences doctrine, then he may be eligible for relief under Senate Bill 775's amendments to section 1170.95. (See *People v. Vieira* (2005) 35 Cal.4th 264, 305

---

[9] The California Supreme Court granted review in *People v. Lopez* (2019) 38 Cal.App.5th 1087, November 13, 2019, S258175, to consider whether Senate Bill 1437 applies to attempted murder under the natural and probable consequences doctrine. However, the court recently transferred the case back to Division Seven of this court with directions to vacate its decision and reconsider the cause in light of Senate Bill 775. (*People v. Lopez* (Nov. 10, 2021, S258175) ___ Cal.5th ___ [2021 Cal. Lexis 7765].)

["defendant generally is entitled to benefit from amendments that become effective while his case is on appeal"].)

Because Valenzuela's appeal is not yet final, we remand the matter to the superior court to conduct further proceedings on the petition. (See *People v. Garcia* (2018) 28 Cal.App.5th 961, 973 [where defendant's judgment would not be final until after effective date of amendments to resentencing statute, it was proper to remand matter to trial court for proceedings after effective date].) On remand, the superior court shall determine whether Valenzuela was convicted of attempted murder under the natural and probable consequences doctrine, and if so, whether he is eligible for relief under section 1170.95, as amended by Senate Bill 775.

## DISPOSITION

The order denying Santos Valenzuela's Penal Code section 1170.95 petition is reversed and the matter is remanded to the superior court to conduct further proceedings on the petition pursuant to section 1170.95, as amended by Senate Bill 775.

NOT TO BE PUBLISHED.

WINDHAM, J.[*]

We concur:

EDMON, P. J.          EGERTON, J.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.